{¶ 1} Bradley Holzwart ("Bradley") and Jessica Holzwart ("Jessica") bring these appeals from the judgments of the Court of Common Pleas, Juvenile Division, of Seneca County finding the children to be dependent and ordering that all medical records be made available to the Attorney for Best Interest ("ABI").[1]
 {¶ 2} Bradley and Jessica are the parents of Madison Holzwart ("Madison"). Jessica is the mother of Autumn Famulare ("Autumn") and Hanna Famulare ("Hanna"). The father of Autumn and Hanna is Scott Famulare ("Scott"). On May 7, 2004, Autumn and Hanna got into an argument with Jessica. After Jessica attempted to discipline the girls, Autumn and Hanna took the phone and locked themselves in the bathroom. They called the police and reported a domestic dispute. When the police arrived, they found the girls still in the bathroom. The officers spoke with the mother who told them that she had attempted to physically discipline her daughters. The officers observed marks on the girls consistent with the form of discipline described by Jessica.
 {¶ 3} While at the house, Bradley became upset that the officers were there and repeatedly asked them to leave the home. Bradley began to hit himself on his arm and chest while speaking with the officers. According to the officers, Bradley's conversation tended to jump from topic to topic. This behavior was exhibited in the presence of Autumn and Hanna. Madison was at a neighbor's house so was not present during this situation. Due to Bradley's odd behavior, the children were taken from the home to their grandmother's home. Later that day, the Seneca County Department of Job and Family Services ("SCDJFS") filed a complaint alleging that Madison, Autumn and Hanna were dependent. An ex parte order was issued giving temporary custody of all three girls to Jessica and ordering Bradley to vacate the home and to have no contact with the girls.
 {¶ 4} On May 8, 2004, a probable cause hearing was held. Officer Jacob DeMonte ("DeMonte") of the Republic Police Department testified that they had been to the home on a prior occasion for a domestic dispute. Probable Cause Hearing, 38. According to DeMonte, on May 7, 2004, Bradley demonstrated that physically striking someone does not harm them by hitting himself and that the children saw this and began to cry again. Id. at 39-40. DeMonte also testified that Bradley's conversation was not focused. Id. at 40. He further testified that Autumn had a slight mark on her right arm and Hanna had a mark on her back from the fight with Jessica. Id. at 41. Bradley was sleeping during the fight. Id. The girls did not report to DeMonte any abuse by Bradley towards them. Id. at 44. Jessica has not reported any physical abuse by Bradley either. Id. DeMonte testified that the prior domestic dispute was a verbal argument between Bradley and Hanna and Autumn. Id. at 54. DeMonte knew of no evidence that Bradley has ever been physically violent with anyone else. Id. Finally, DeMonte testified that Chief Stevens determined that there was no probable cause to arrest Jessica for domestic violence against the girls. Id. at 45. Based solely upon this testimony, the trial court found probable cause for the complaint and continued his prior order removing Bradley from the home and giving temporary custody to Jessica.
 {¶ 5} On June 3, 2004, an adjudication hearing was held on the complaints. During the hearing, SCDJFS presented the testimony of two witnesses. The first witness was again DeMonte who testified as he did at the probable cause hearing. DeMonte also testified that he believed that Jessica's actions towards the girls were borderline discipline. Adjudication Hearing, 38. However, he stated that the actions were reasonable and appropriate discipline, although at the extreme end of the spectrum. Id. He further testified that the girls were crying the whole time, but cried harder when Bradley began hitting himself. According to him, Madison was not present in the home to his knowledge when any of these actions occurred, including the fight among Jessica, Autumn and Hanna. Id. at 40. The home was appropriately furnished, was well kept, and the children were appropriately dressed. Id. at 41-42. In all, the basic needs of the children were met. Id. at 42. When DeMonte finally met Madison, she was happy and seemed completely unaware of the incident. Id.
 {¶ 6} After DeMonte, SCDJFS presented the testimony of Michael McLane ("McLane"). McLane is an in-take social worker with SCDJFS. He testified that he had put together a case plan for this family. He testified that Jessica was complying with the case plan, but Bradley was not. Id. at 69 and 71. He further testified that Jessica told him that Bradley was on medication "but was skeptical at the time as to whether he was taking it as prescribed." Id. at 61. No basis was given for her skepticism. Id. No other evidence was presented by any party. Based upon this testimony, the trial court found all three children to be dependent due to the alleged emotional harm they suffered.
 {¶ 7} On August 4, 2004, an adjudication hearing was held. The trial court granted legal custody of Madison to Jessica, legal custody of Autumn and Hanna to Scott, and ordered that Bradley could have supervised visits at PatchWorks House with Madison. On September 21, 2004, the trial court appointed an ABI. The order appointing the ABI provided the ABI with unlimited access to any and all medical records of the parents. The parties appeal from these orders and raise the following assignments of error.
 {¶ 8} Jessica claims the following assignments of error.
The trial court erred when it found that [SCDJFS] establisheddependency by clear and convincing evidence.
 The trial court erred when it did not [find] the evidence was againstthe manifest weight of a finding of dependency.
 The trial court erred with its restraining order restricting [Bradley]from the marital residence because it violates [Jessica's] marriageprivacy.
 The trial court's restraining order against [Bradley] violatesOhio's public policy to protect marriage.
 {¶ 9} Bradley claims the following assignments of error.
The trial court erred in finding that [Madison] is a dependent child asdefined by [R.C. 2151.04(C)] where such a finding was against themanifest weight of the evidence.
 The trial court erred in ordering that [Bradley] is restrained frombeing found at the residence at 311 S. Broadway Street, Republic.
 The trial court order restraining [Bradley] from being found at theresidence * * * constitutes a governmental taking of [Bradley's] realproperty without just compensation and thus violates the Fifth andFourteenth Amendments of the United States Constitution and Article I,Secion 1 and Section 19 of the Ohio Constitution.
 The trial court erred in ordering that visits between [Bradley] and[Madison] be supervised.
 The trial court erred in taking custody of Madison away from[Bradley].
 The trial court erred in granting the [ABI] permission to inspect andcopy medical and/or psychological records relating to an adjudicateddependent child's parent without the consent of the parent.
 {¶ 10} Jessica's first and second assignments of error and Bradley's first assignment of error all raise the issue of whether the dependency finding is supported by the evidence. The trial court in this case found the children dependent under R.C. 2151.04(C).
As used in this chapter, "dependent child" means any child:
* * *
(C) Whose condition or environment is such as to warrant the state, inthe interests of the child, in assuming the child's guardianship[.]
R.C. 2151.04. "A finding of dependency under R.C. 2151.04(C) focuses on the condition of the children's home and whether they are receiving proper care and support." In re A.C., 9th Dist. Nos. 03CA0053, 03CA0054, 03CA0055, 2004-Ohio-3248 at ¶ 11. The conduct of a parent is only relevant insofar as it forms a part of the environment and is significant only if it has a detrimental impact on the children. Id. See also In reHurst, 3rd Dist. Nos. 13-03-27, 13-03-28, 2003-Ohio-5460. "In the absence of evidence showing a detrimental impact upon the child of the relationship established as here existing, that relationship, as a part of the child's environment does not warrant the state in removing the child from parental custody in the best interest of that child." In reBurrell (1979), 58, Ohio St.2d 37, 388 N.E.2d 738. "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." In re A.C., supra at ¶ 11 (citingBurrell, supra).
 {¶ 11} In this case, the only evidence before the trial court is that on May 7, 2004, Autumn and Hanna were in a dispute with Jessica in which Jessica resorted to physical discipline. The girls were upset with Jessica and locked themselves in the bathroom where they called the police. Bradley was asleep during these events and Madison was at the neighbor's home. Upon the police arriving, Bradley became agitated and began hitting himself. DeMonte testified that the girls were crying before this and cried more upon seeing this. Once again, DeMonte stated that Madison was not present. Prior to this the police had been called to the home in November of 2003, for a verbal argument between the girls and Bradley. Other than this, the only evidence is that the home was well kept and that the girls appeared to be appropriately dressed and fed. No allegations of abuse or neglect were made. The sole claim is that the girls are suffering emotional harm from the environment. However, there is no competent evidence to support this claim. DeMonte admitted that while he believed the girls could be emotionally harmed by that situation, he was not qualified to make a determination on that issue. SCDJFS did not present any evidence from one qualified to make a determination as to whether the girls were emotionally harmed. Based upon the testimony given at the probable cause hearing and the adjudication hearing, there is no basis for finding that the home environment of the children is not providing the children with the adequate care or support.
 {¶ 12} The trial court in its findings focuses on the fact that Bradley did not awake from his sleep to intervene and protect the children. However, according to the testimony, what he would be protecting the children from was reasonable and appropriate punishment. Also the trial court focuses on the fact that Bradley's odd behavior caused the children to cry. According to the testimony, the children were already crying and the argument between the police and Bradley made them cry harder. Although this may be evidence that the children were upset at this time, it is not evidence that the children had suffered a detrimental impact that was more than temporary unhappiness. Finally, the court notes that Jessica made a claim that she did not believe Bradley was taking his medication. However, there is no evidence in the record that supports this statement. The testimony came from McClane who just stated that he was told this information by Jessica but was given no basis for the statement. Additionally, the testimony does not provide any information that the failure to take the medication has a detrimental impact on the environment of the children. Given the evidence before it at trial, the trial court lacked sufficient evidence specifically demonstrating that the environment was detrimental to the children. Thus, the trial court erred in finding the girls to be dependent. The first and second assignments of error of Jessica and the first assignment of error of Bradley are sustained.
 {¶ 13} Since the trial court's findings that Madison, Autumn, and Hanna are dependent are not supported by the evidence, the remaining assignments of error are moot. Therefore we will not address them. Any judgments entered subsequent to the adjudication entry are void and are vacated.
 {¶ 14} The judgments of the Court of Common Pleas, Juvenile Division, of Seneca County are reversed and the cause is remanded.
Judgments reversed and causes remanded.
 Cupp, P.J., and Rogers, J., concur.
[1] The ABI is basically a second guardian ad litem for the child. This court notes that a guardian ad litem had previously been appointed. The source of the trial court's authority to appoint a second guardian ad litem is unclear.