OPINION
{¶ 1} Appellant, Barbara M., appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division ("the trial court"), finding her son to be dependent and *Page 2 
granting legal custody to the child's father. For the reasons outlined below, we reverse and remand.
 {¶ 2} Barbara and Michael M. married in Ohio in November 1989. In 1994, the two moved to Texas for Michael's employment. J.M., a minor child, was born to the couple on May 24, 1994. Barbara claims that she suffered physical abuse at the hands of Michael throughout the marriage. She commenced divorce proceedings in 2001 and the couple separated. Both parties separately moved back to Ohio in mid 2002. The Texas court entered a final decree of divorce in March 2003. The decree designated Barbara the custodial parent of J.M. and awarded visitation rights to Michael.
 {¶ 3} In April 2005, Barbara was involuntarily hospitalized because of her mental state. J.M. was placed with his godparents at that time. The Clermont County Court of Common Pleas, Probate Division ("the probate court"), found Barbara to be a mentally ill person in need of treatment and hospitalization. Upon conducting a review hearing, the probate court ruled that Barbara could continue treatment at the Clermont Counseling Center as an outpatient. This court affirmed the decision. See In theMatter of Barbara M., Clermont App. No. CA2005-05-040, 2006-Ohio-344.
 {¶ 4} On May 9, 2005, appellee, the Clermont County Department of Job and Family Services ("Children's Services"), filed a complaint in the trial court alleging that J.M. was a dependent child. In support, the complaint cited Barbara's mental illness and emergency hospitalization and alleged that she was unstable and unable to safely provide for J.M.'s needs. The magistrate awarded emergency protective custody of J.M. to Children's Services, after which J.M. was placed with his paternal grandparents.
 {¶ 5} In November 2005, Michael filed for custody of J.M. On May 12, 2006, the trial court conducted an adjudicatory hearing and concluded that J.M. was a dependent child. A dispositional hearing immediately followed and continued in progress to June 26, 2006, then *Page 3 
to August 24, 2006, then to October 12, 2006. On October 18, 2006 the trial court filed its entry finding J.M. dependent and awarding legal custody of J.M. to Michael. Barbara timely appeals, raising eleven assignments of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO MAKE SUFFICIENT FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER CIVIL R. 52."
 {¶ 8} Barbara timely requested findings of fact and conclusions of law following the trial court's October 18, 2006 decision. The trial court complied and issued its findings and conclusions on October 26, 2006. Barbara attacks the findings and conclusions issued by the court as insufficient to articulate the court's basis for adjudicating J.M. dependent and awarding legal custody to Michael.
 {¶ 9} Civ.R. 52 provides that when a matter is tried without a jury, a trial court must issue separate findings of fact and legal conclusions upon the request of a party. The purpose behind the rule is to assist the appellate court in reviewing the record and establishing the validity of the basis for the trial court's judgment. Valentine v.Valentine, Butler App. No. CA2004-01-024, 2005-Ohio-2366, ¶ 31.
 {¶ 10} In issuing its findings and conclusions, the trial court referenced the fact that Barbara was adjudged mentally ill and ordered to undergo outpatient treatment. The court also noted that Barbara had repeatedly accused Michael of inappropriate sexual behavior towards, or in the presence of, J.M. The findings went on to state that both parents professed their love for J.M. and the desire to be his custodian, and that J.M. had a positive relationship with both parents. The court concluded that J.M. was a dependent child, that Children's Services made reasonable efforts to prevent J.M.'s removal from his home and to reunify him with Barbara, and that it would be contrary to J.M.'s welfare to return him to Barbara's home. Thereafter, the court concluded that legal custody should be awarded to Michael. *Page 4 
 {¶ 11} On reviewing the trial court's findings and conclusions, we are unable to clearly distinguish the basis for the trial court's dependency and custody determinations. The court neglected to cite which evidence it considered in making these determinations. See, e.g., Dixon v.Garris (May 31, 1996), Perry App. No. CA-95-15, 1996 WL 363796 at *1. In addition, the court failed to link any of the findings it did make to the applicable statutes. Finally, although Barbara was adjudicated "mentally ill" in May 2005, there is no definitive evidence that she was still considered "mentally ill" and should not retain custody at the commencement of the dependency proceedings in May 2006. The record contains conflicting evidence regarding her responsiveness to medication and counseling. Thus, it remains unclear whether Barbara continues to be "mentally ill" and a danger to herself or others.
 {¶ 12} We conclude that the trial court's failure to make the necessary findings and to support its conclusions amounts to prejudicial error. Barbara's first assignment of error is sustained.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY FAILING TO DESCRIBE IN ITS FINDINGS OF FACT THE RELEVANT SERVICES PROVIDED BY THE AGENCY TO THE FAMILY OF THE CHILD, AND WHY THOSE SERVICES DID NOT PREVENT REMOVAL OF THE CHILD FROM THE CHILD'S HOME OR ENABLE THE CHILD TO RETURN SAFELY HOME AS REQUIRED BY REVISED CODE § 2151.419(B)(1)."
 {¶ 15} Barbara maintains that the trial court, in its findings of fact and conclusions of law, neglected to specify the relevant actions taken by Children's Services to prevent J.M.'s removal from his home following her hospitalization, or to describe why those services did not prevent his removal.
 {¶ 16} In situations where a child services agency did not have prior contact with a child but removes the child from his home during an emergency in which the child could not safely *Page 5 
remain in the home, a trial court may determine that the agency made reasonable efforts to prevent the removal from the home or to enable the child to return safely home. R.C. 2151.419(A)(1). The child's health and safety are paramount considerations in making such a determination. Id. "[T]he issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute."In re K.M., Butler App. No. CA2004-02-052, 2004-Ohio-4152, ¶ 23.
 {¶ 17} A court that is required to make a "reasonable efforts" determination must issue written findings providing the reasons in support of its determination. R.C. 2151.419(B)(1). The court "shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." Id.
 {¶ 18} Barbara complains that, after she returned home from her involuntary hospitalization, no one from Children's Services contacted her regarding her son's whereabouts. According to Barbara, Children's Services also failed to provide any services to prevent J.M.'s removal from home or to make it possible for him to safely return home.
 {¶ 19} The trial court's failure to identify in its decision the specific efforts expended by Children's Services to prevent J.M.'s removal or to return him to his home is prejudicial error. As stated, such findings are required under Ohio law. See R.C. 2151.419(B)(1). See, e.g., In re Bolser (Jan. 31, 2000), Butler App. Nos. CA99-02-038, CA99-03-048, at 16-19. Following Barbara's hospitalization in April 2005, J.M. was placed in the custody of his godparents, then with Children's Services, and then with his paternal grandparents. Barbara insists that these custody changes took place with no notice to her or indication of any plan to reunify.
 {¶ 20} In its findings and conclusions, the trial court stated that "the Clermont County Children's Protective Services made reasonable efforts to prevent removal or eliminate continued removal and to reunify the child pursuant to Ohio Revised Code Section *Page 6 
2151.419(A)(1)." Nowhere in the entry is this conclusion of law supported by evidence. This conclusory statement by the trial court is insufficient to fulfill its statutory obligation to make a "reasonable efforts" determination. Rather, the law requires the court to briefly describe the relevant services provided by the agency and why they were not effective in restoring J.M. to his home. See R.C. 2151.419(B)(1).
 {¶ 21} Barbara's second assignment of error is sustained.
 {¶ 22} Assignment of Error No. 3:
 {¶ 23} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY ENTERING A FINDING OF DEPENDENCY PURSUANT TO REVISED CODE § 2151.353(D) WITHOUT JOURNALIZING A CASE PLAN."
 {¶ 24} Barbara claims that the record does not contain a case plan that was made part of the disposition order, in derogation of the requirements of R.C. 2151.353(D). This statute mandates that a case plan be journalized as part of a court's dispositional order where a finding of dependency is made. Id. See, e.g., In re Gang, Warren App. Nos. CA2002-04-032,-033, 2003-Ohio-197, ¶ 36-38. The record reflects that a case plan was filed with the trial court on November 21, 2005. Although Barbara argues that this case plan was not made "part of" the court's dispositional order issued nearly one year later in October 2006, we conclude that the trial court did not violate R.C. 2151.353(D) by failing to journalize the plan simultaneously with the issuance of its dispositional order. See, e.g., In re Holman, Highland App. No. 99CA24, 2000-Ohio-1948, 2000 WL 33226318 at *6.
 {¶ 25} Barbara's third assignment of error is overruled.
 {¶ 26} Assignment of Error No. 4:
 {¶ 27} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY CONTINUING THE CHILD'S PLACEMENT IN TEMPORARY CUSTODY FOLLOWING EXPIRATION OF ITS PREVIOUS ORDER OF TEMPORARY CUSTODY, AND BY FAILING TO ENTER AN *Page 7 
ORDER OF ADJUDICATION UNTIL OCTOBER 18, 2006."
 {¶ 28} For the first time on appeal, Barbara raises the issue that the parties did not act within the statutory period to either request an extension or terminate the order for temporary custody. She also faults the trial court for filing its dependency adjudication and custody entry nearly 18 months after the dependency complaint was filed.
 {¶ 29} Any temporary custody order issued under R.C. 2151.353(A) terminates one year after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care (the "sunset date"). R.C. 2151.353(F). A party has one year from the filing of the dependency complaint to request an extension or termination of a temporary custody order. R.C. 2151.353(G)(1).
 {¶ 30} As stated, the complaint in this case was filed on May 9, 2005 and the adjudicatory and dispositional hearings were convened on May 12, 2006. Although this exceeds the sunset date, Barbara failed to raise any objection before the trial court. Barbara also failed to raise any objection before the trial court regarding the fact that the court did not file its dependency and custody entry until almost 18 months after the dependency complaint was filed. Consequently, with respect to both of these issues, she has waived all but plain error.
 {¶ 31} A plain error is one that is "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 209. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v.Davidson, *Page 8 79 Ohio St.3d 116, 1997-Ohio-401, syllabus.
 {¶ 32} The Ohio Supreme Court has held that "the passing of the sunset date pursuant to R.C. 2151.353(F) does not divest juvenile courts of jurisdiction to enter dispositional orders." In re Young Children,76 Ohio St.3d 632, 637, 1996-Ohio-45. Hence, the trial court retained jurisdiction over the matter throughout the course of the dispositional hearings. This did not vitiate Children's Services' statutory duty to timely file a motion to extend or terminate temporary custody, however. Id. at 638. The Ohio Supreme Court construed the effect of a party's failure to timely request an extension or termination of a temporary custody order as follows:
 {¶ 33} "[W]hen the sunset date has passed without a filing pursuant to R.C. 2151.415 and the problems that led to the original grant of temporary custody have not been resolved or sufficiently mitigated, courts have the discretion to make a dispositional order in the best interests of the child. Where the original problems have been resolved or sufficiently mitigated, courts may not make further dispositional orders based on the original complaint." Id.
 {¶ 34} Indeed, the sunset date on the original complaint had passed in the case at bar. However, the problems that led to the granting of custody of J.M. to Children's Services were not remedied by that time. Barbara was still undergoing treatment for her mental state, and the record contains conflicting testimony regarding her recovery. The trial court had discretion to render a dispositional order in the best interests of J.M. Thus, the trial court did not err in proceeding with the dispositional hearings while J.M. remained in temporary custody, or in issuing its dispositional order. Without error, we can find no plain error warranting reversal.
 {¶ 35} Barbara's fourth assignment of error is overruled.
 {¶ 36} Assignment of Error No. 5:
 {¶ 37} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY CONDUCTING *Page 9 
AN IN CAMERA INTERVIEW OF THE CHILD WITHOUT MAKING A RECORD OF THE EXAMINATION."
 {¶ 38} In June 2006, Barbara filed a motion to request an in camera interview of J.M. The trial court conducted an interview on August 24, 2006, but failed to make a record of it. When this omission was discovered, the court conducted a second interview on August 30, 2006 and recorded it. Barbara asserts that the court's failure to make a record of the August 24 interview mandates reversal.
 {¶ 39} Juv.R. 37(A) requires a juvenile court to make a record of adjudicatory and dispositional proceedings in various types of juvenile cases, including dependency determinations. Here, once the trial court discovered its failure to record the first interview, it took remedial action by recording a second interview. Barbara insists that this error warrants reversal because J.M.'s responses at the first interview cannot be known or reviewed.
 {¶ 40} We agree that the trial court erred in failing to record the first in camera interview with J.M. However, this error does not merit reversal. Although we cannot know whether precisely the same questions were asked in the first and second interviews, the record does contain a transcript of the second interview available for this court's review.
 {¶ 41} Upon examination of the sealed transcript of the second in camera interview, we are satisfied that the trial court effectively questioned J.M. to determine his wishes and concerns regarding the allocation of parental rights and related issues. See R.C. 3109.04(B) (court shall conduct an in camera interview upon the request of a party to determine the best interest of the child in allocating parental rights and responsibilities) and 3109.051(C) (court may conduct in camera interview to ascertain the child's wishes and concerns regarding parenting time and visitation). We conclude that Barbara did not suffer prejudice as a result of the trial court's failure to record the first interview.
 {¶ 42} Barbara's fifth assignment of error is overruled. *Page 10 
 {¶ 43} Assignment of Error No. 6:
 {¶ 44} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY ADMITTING INTO EVIDENCE, OR CONSIDERING THE RESULTS OF, THE FATHER'S POLYGRAPH EXAMINATION."
 {¶ 45} Throughout the course of the proceedings, Barbara repeatedly accused Michael of physically and sexually abusing J.M., emphasizing an incident where Michael allegedly masturbated in front of J.M. Michael emphatically denied these accusations and submitted to a polygraph examination. The trial court admitted the results of this polygraph over Barbara's objections. Barbara challenges the admission of these results as contrary to Ohio law in view of her refusal to stipulate to their admission.
 {¶ 46} A trial court's decision to admit or exclude evidence will not be reversed absent an abuse of discretion. Beard v. Meridia HuronHosp., 106 Ohio St.3d 237, 2005-Ohio-4787, ¶ 20. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 47} In Ohio, the results of a polygraph examination are only admissible if there is a stipulation between the parties to that effect.In re D.S., 111 Ohio St.3d 361, 2006-Ohio-5851, ¶ 13. Even then, such results are only admissible for purposes of corroboration or impeachment. Id. Here, the parties did not stipulate to the admission of Michael's polygraph results.
 {¶ 48} There is no evidence in the trial court's decision that it relied upon the results of the polygraph in making its custody determination. However, a number of witnesses testified as to the results of the test. Kevin Harnisch and Candice Davis, employees of Children's Services, testified that the polygraph results helped to dispel their concerns regarding Barbara's allegations of Michael's sexual misconduct with J.M. Robert Bauer, J.M.'s guardian *Page 11 
ad litem, testified that he had been informed that Michael passed a polygraph test. In light of this testimony, it is possible that the results of the polygraph examination influenced the trial court. Regardless, the results were not properly admitted.
 {¶ 49} In the absence of a stipulation by both parties that the results of Michael's polygraph examination were admissible, the trial court abused its discretion in admitting the results. Barbara's sixth assignment of error is sustained.
 {¶ 50} Assignment of Error No. 7:
 {¶ 51} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADMITTING INTO EVIDENCE IN THIS JUVENILE DEPENDENCY MATTER THE TRANSCRIPTS OF THE MAY 9 AND APRIL 25, 2005, HEARINGS OF A SEPARATE PROBATE MATTER."
 {¶ 52} In January 2006, Children's Services moved the trial court to admit the transcripts of the probate court hearings of May 9, 2005 and April 25, 2005. The transcripts were admitted over Barbara's objections. Barbara argues that the probate proceedings involved an entirely different issue than the dependency proceedings with J.M. The focus in questioning the witnesses in the probate proceedings was whether or not Barbara was a mentally ill person. The focus in questioning the witnesses in the dependency proceedings was whether or not J.M. was a dependent child. Accordingly, Barbara maintains that she did not have the opportunity to properly cross-examine the witnesses in the probate proceedings in the context of a child dependency determination. She opposes the trial court's admission of the transcripts as inadmissible hearsay.
 {¶ 53} Former testimony from other court proceedings is inadmissible unless it falls within one of the recognized exceptions to the hearsay rule. State v. Keairns (1984), 9 Ohio St.3d 228, 229. Such testimony is exempted from the hearsay rule under Evid.R. 804(B)(1) if the declarant is unavailable as a witness. See Evid. R. 804(A) (defining witness unavailability). In the present matter, the issue of unavailability of the witnesses who testified at the probate *Page 12 
proceedings was never raised. The admission of this hearsay testimony cannot, therefore, be justified under Evid.R. 804(B)(1).
 {¶ 54} The testimony in the probate court proceedings appears to be the basis for the trial court's dependency determination, see R.C.2151.04(B),[1] and the determining factor in its subsequent award of custody of J.M. to Michael. We conclude that the trial court abused its discretion in admitting the probate court transcripts. Barbara's seventh assignment of error is sustained.
 {¶ 55} Assignment of Error No. 8:
 {¶ 56} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY ADMITTING AS EVIDENCE STATEMENTS OF AN EXPERT THAT WERE NOT RELIABLE, COMPETENT, OR MATERIAL."
 {¶ 57} Barbara opposes the admission of testimony by Dr. Rodney Vivian, one of her attending psychiatrists, from the probate proceedings because she insists that Dr. Vivian was unable to provide his opinions to a reasonable degree of medical certainty. Barbara emphasizes that such testimony is inadmissible as expert opinion.
 {¶ 58} We note that, due to our disposition of Barbara's seventh assignment of error, Barbara's eighth assignment of error has been rendered moot.
 {¶ 59} Barbara's eighth assignment of error is overruled.
 {¶ 60} Assignment of Error No. 9:
 {¶ 61} "THE TRIAL COURT-ERRED [SIC] AS A MATTER OF LAW BY BY [SIC] FAILING TO GRANT VISITATION RIGHTS TO THE CHILD'S GRANDMOTHER, RITA [F], PURSUANT TO REVISED CODE § 3109.051(B)."
 {¶ 62} J.M.'s maternal grandmother filed a motion for visitation on November 16, 2006. *Page 13 
The next day, Barbara filed her notice of appeal. Barbara urges this court to apply R.C. 3109.051(B) to this case so that J.M.'s grandmother may pursue visitation rights.
 {¶ 63} Grandparents may be granted visitation rights in certain cases where it is in the best interest of the child. See, e.g., R.C. 3109.051
(B)(1) (in a divorce, dissolution, annulment, or child-support proceeding); 3109.11 (when the child's parent is deceased); 3109.12 (when the child's mother is unmarried). However, we decline to address the grandmother's motion for visitation because it is not relevant to Barbara's appeal and it was not appealed by the grandmother herself.
 {¶ 64} Barbara's ninth assignment of error is overruled.
 {¶ 65} Assignment of Error No. 10:
 {¶ 66} "THE JUDGMENT OF THE TRIAL COURT IS CONTRARY TO LAW BECAUSE IT IS BASED ON INSUFFICIENT EVIDENCE TO SHOW THAT THE CHILD WAS A DEPENDENT CHILD AS DEFINED BY R.C. 2151.04(B) AND THAT CUSTODY WAS PROPERLY GRANTED TO THE FATHER UNDER R.C. § 2151.353 AND R.C. 3109.04(F)(1)."
 {¶ 67} Assignment of Error No. 11:
 {¶ 68} "THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 69} Barbara's tenth and eleventh assignments of error argue that there was not sufficient, credible evidence to support the trial court's decision adjudicating J.M. dependent and awarding legal custody to Michael. However, we are unable to rule on the sufficiency and weight of the evidence in support of the trial court's decision because the trial court failed to make the required findings. Barbara's tenth and eleventh assignments of error therefore have been rendered moot by our disposition of her first and second assignments of error. See App.R. 12(A)(1)(c). *Page 14 
 {¶ 70} To the extent that Barbara has raised other issues on appeal, we have considered them and find them to be without merit.
 {¶ 71} We reverse the trial court's dependency determination and its subsequent order granting custody of J.M. to Michael. We remand for the trial court to conduct a new hearing on the matter, in which the court is to exclude consideration of the improperly admitted polygraph results and probate court transcripts. ¶ 72} Judgment reversed and remanded.
BRESSLER and POWELL, JJ., concur.
[1] R.C. 2151.04(B) defines a "dependent child" as any child "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian[.]" *Page 1