[Cite as *In re J.G.*, 2013-Ohio-417.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE J.G.

C.A. No.     12CA0037

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     11-0991-AND

DECISION AND JOURNAL ENTRY

Dated: February 11, 2013

BELFANCE, Judge.

{¶1} Appellant, Thomas H. ("Father"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that adjudicated his minor child dependent and placed him in the temporary custody of Wayne County Children Services Board ("CSB"). For the reasons that follow, this Court affirms in part and reverses in part.

I.

{¶2} Father is the natural father of J.G., born August 2, 2000. Although J.G.'s natural mother and Father's wife ("Step-mother") participated in the proceedings below, Father is the only parent-figure who has appealed the trial court's judgment. Step-mother's natural daughter, who is one year younger than J.G., was also the subject of a related dependency case but is not a party to the appeal because she is not Father's child.

{¶3} The custodial history of J.G. for the nine years prior to this case is not detailed in the record except that he resided in the legal custody of his paternal grandmother for a period of

time until her death in 2010. After the grandmother's death, J.G. was placed in the home of Father and Step-mother. Step-mother was granted sole legal custody of J.G. because Father suffered from a blood disorder that had prevented him from working since 2005 and required continual hospitalizations and adjustments of his medication.

{¶4} When J.G. moved into the home of Father and Step-mother, CSB already had a voluntary case plan with the family due to ongoing domestic violence between Father and Step-mother and its impact on Step-mother's natural daughter. Father had been convicted three times of domestic violence against Step-mother. J.G. was added to the voluntary case plan, and CSB continued to offer services to the family.

{¶5} CSB ultimately filed this involuntary dependency case after a weekend of continual quarreling between Father and Step-mother, during which Step-mother threatened to commit suicide, and sheriff's deputies were repeatedly dispatched to the home. During one of the incidents, Step-mother actually attempted suicide by ingesting a large quantity of pills. She was taken to the hospital, where she received medical treatment, but was released and returned home that same day. The following day, however, Step-mother was admitted to a hospital psychiatric ward.

{¶6} When the caseworker came to the home to investigate the weekend of incidents, she learned that Father had made a video recording of Step-mother's suicide attempt. She watched the video and was disturbed to discover that Father had recorded the incident while J.G. and Step-mother's daughter watched. Although the children could not be seen in the video, their voices could be heard in the background, begging Step-mother not to take the pills.

{¶7} Consequently, CSB filed a complaint, alleging that J.G. was a dependent child under R.C. 2151.04(C)(1). Following a contested hearing before Judge Raymond Leisy, the trial

court adjudicated J.G. a dependent child, concluding that the environment of his home was "toxic" and "potentially inherently dangerous" for him. Through appeal number 11CA0038, Father immediately appealed the adjudication, and the trial court stayed further proceedings.

{¶8} On March 1, 2012, this Court dismissed appeal number 11CA0038 for lack of a final, appealable order. Shortly afterward, Judge Leisy set a dispositional hearing for May 23, 2012. Prior to that date, however, Judge Leisy retired, and the governor appointed Latecia Wiles to fill his unexpired term as the sole juvenile and probate judge in Wayne County. Through an order filed May 2, 2012, Judge Wiles reiterated that this case was set for disposition on May 23. She further indicated that she had a conflict of interest in this case because, prior to her appointment to the bench, she had "participated personally and substantially in this matter" through her employment as an assistant county prosecutor. Her order also stated that "this matter has been assigned to [Judge] Wiest[.]"

{¶9} Apparently because this same potential conflict would arise repeatedly during the beginning of Judge Wiles' judicial tenure, Judge Mark Wiest, as the presiding judge of the Wayne County Court of Common Pleas, General Division, signed a miscellaneous order pursuant to Sup.R. 3(B)(2). The order temporarily appointed Judge Wiest and Judge Spitler, both of the General Division of the Wayne County Court of Common Pleas, to hear those cases in which Judge Wiles had a conflict of interest.

{¶10} On May 7, 2012, Judge Wiest's temporary appointment order was filed in this case. That same day, Judge Wiest further ordered that the case be set for judicial review and pre-trial hearing on May 16, 2012, and for disposition on May 23, 2012. Without any objection from any of the parties, Judge Wiest presided over the pre-trial and dispositional hearings. Following

the contested dispositional hearing, the trial court ordered that J.G. be placed in the temporary custody of CSB.

{¶11} Father appeals and raises six assignments of error. For ease of analysis, this Court first addresses Father's sixth assignment of error because he raises a jurisdictional challenge to the proceedings below.

II.

ASSIGNMENT OF ERROR VI

AS A JUDGE OF THE GENERAL DIVISION OF THE WAYNE COUNTY COURT OF COMMON PLEAS, JUDGE WIEST LACKED SUBJECT MATTER JURISDICTION TO ENTER DISPOSITIONAL OR OTHER ORDERS IN THIS DEPENDENCY CASE AS A MATTER OF LAW AND THIS COURT SHOULD VACATE SAID ORDERS.

{¶12} In his sixth assignment of error, Father challenges the subject matter jurisdiction of the trial court after Judge Wiest was assigned to the case. Father's premise underlying his argument is that the dependency proceeding was transferred from the juvenile court to the common pleas court. However, his case was not transferred from the juvenile division to the general division to be heard by Judge Wiest. Instead, the record clearly reflects that Judge Wiest was appointed to preside over this juvenile case, which remained pending throughout these proceedings as case number 11-0991-AND in the juvenile division of the court of common pleas.

{¶13} "The subject matter jurisdiction of a court refers to the type of case that the court is authorized to hear. A court does not exceed its subject matter jurisdiction as long as the case before it involves any cause of action cognizable by the forum." (Internal citations and quotations omitted.) *In re P.T.*, 9th Dist. No. 24207, 2008–Ohio–4690, ¶ 8. This dependency case falls within the juvenile court's subject matter jurisdiction pursuant to R.C. 2151.23(A)(1),

which explicitly provides that the juvenile court "has exclusive original jurisdiction" over child abuse, neglect, and dependency cases. *Id*., at ¶ 9.

{¶14} Consequently, Father's argument that Judge Wiest was improperly appointed to preside over this case did not affect the trial court's subject matter jurisdiction. *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 10-15 (emphasizing that any procedural irregularities in assigning a juvenile case to a visiting judge did not affect the court's subject matter jurisdiction and rendered the judgment voidable, not void.) Although Father did not challenge the manner in which Judge Wiest was appointed to the case below, we address it because this issue may arise in future cases in which Judge Wiles has a conflict of interest.

{¶15} Father first points to an order signed by Judge Wiles, filed on May 2, 2012, in which Judge Wiles indicated that she had a conflict of interest in this case and that "this matter has been assigned to the Honorable Mark K. Wiest[.]" The parties do not dispute, however, that Judge Wiles lacked authority to appoint another judge to hear the case. *See, e.g., Schucker v. Metcalf*, 22 Ohio St. 3d 33, 37 (1986). Therefore, to the extent Judge Wiles's May 2 order may be construed as an order appointing Judge Wiest to preside over this case, it was a nullity.

{¶16} A proper assignment order was filed several days later, however, before Judge Wiest had taken any action in this case. Although Father argues that only the Chief Justice of the Ohio Supreme Court had authority to appoint another judge to replace Judge Wiles as the juvenile judge in this case, he is incorrect. Article IV, Section 5(A)(3) of the Ohio Constitution grants the authority to the Chief Justice or her designee to assign a judge to temporarily sit or hold court in another division, but it further provides that "[r]ules may be adopted to provide for the temporary assignment of judges to sit and hold court in any court established by law." Pursuant to that constitutional provision, former Sup.R. 3(B) "provide[d] the sole authority for

transfers of judges from one division to another other than by assignment of the Chief Justice[.]" *Schumaker*, 22 Ohio St. 3d at 37 (construing the same language in former Sup.R. 2).

{¶17} At the time Judge Wiest was appointed to hear this case, Sup.R. 3(B) authorized the presiding judge of the general division of a court of common pleas to "[a]ssign judges of the court on a temporary basis to serve in another division of the court as required by the business of the court."[1] Former Sup.R. 3(B)(2); *Schumaker*, 22 Ohio St.3d at 37 (concluding that "only the Chief Justice, Acting Chief Justice of this court, or the presiding judge of a court of common pleas can assign a judge from one division of the same court to another division."); *accord Wright v. Money*, 82 Ohio St.3d 424 (1998) (holding that a probate judge was properly assigned by the presiding judge to preside over defendant's criminal case in the general division of the Marion County Court of Common Pleas).

{¶18} As presiding judge of the Wayne County Court of Common Pleas, Judge Wiest had authority to assign himself, a judge in the general division, to serve on a temporary basis in the juvenile division "as required by the business of the court." The business of the court required assignment of another judge because, as Judge Wiles indicated in her May 2 order, she had a conflict of interest in this case.

{¶19} Through a miscellaneous journal entry captioned, "IN RE: TEMPORARY APPOINTMENT OF JUDGES," Judge Wiest temporarily assigned himself and Judge Spitler, both of the General Division of the Wayne County Court of Common Pleas, to hear cases in the juvenile division "where the newly appointed Judge has conflicts." Judge Wiest's temporary assignment order was filed in this case on May 7, before he had taken any other action.

---

[1] Effective December 1, 2012, this language is set forth in Sup.R. 3.01(B).

Consequently, Father has failed to demonstrate that Judge Wiest did not properly preside over this case pursuant to a temporary appointment authorized under former Sup.R. 3(B)(2).

{¶20} Father raises other challenges under this assignment of error that this Court will not address because he raises them for the first time on appeal, and he has not argued plain error. *See In re T.E.,* 9th Dist. No. 22835, 2006–Ohio–254, ¶ 7. Moreover, his argument that Judge Wiest should not have presided over this case because he was biased should have been directed to the Ohio Supreme Court. R.C. 2701.03; *State v. Ramos*, 88 Ohio App.3d 394, 398 (9th Dist. 1993). Father's sixth assignment of error is overruled.

ASSIGNMENT OF ERROR I

THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE THAT STEPMOTHER'S SUICIDE THREATS AND THE ALLEGED OCCURRENCE OF DOMESTIC VIOLENCE WITHIN J.G.'S HOME DETRIMENTALLY IMPACTED J.G. RENDERS THE TRIAL COURT'S ADJUDICATION OF DEPENDENCY CONTRARY TO LAW.

{¶21} Father's first assignment of error is that CSB failed to prove that J.G. was a dependent child under R.C. 2151.04(C), which required the agency to prove, by clear and convincing evidence, that J.G. was a child "[w]hose condition or environment [was] such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" Specifically, Father argues that CSB's evidence demonstrated only that J.G.'s home environment included domestic violence and suicide threats by Step-mother, not that he had been negatively affected by that environment. The essence of Father's argument is that a detrimental impact on J.G. cannot be inferred from his ongoing exposure in his home to domestic violence and suicide threats by Step-mother. We disagree.

{¶22} The cases cited by Father, *In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134 (6th Dist.), and *In re Holzwart*, 3d Dist. Nos. 13-04-32, 13-04-33, 13-04-34, and 13-04-40,

2005-Ohio-1602, do not support his argument that a detrimental impact will not be inferred from a child's ongoing exposure to domestic violence in the home. The adjudications in *Alexander C.* and *Holzwart* were reversed due to the lack of evidence that those children had, in fact, been exposed to ongoing domestic violence in their homes. *Holzwart* at ¶ 11; *Alexander C.* at ¶ 11-24. In *Alexander C.*, the court explicitly recognized that the requirements of R.C. 2151.04(C) would have been satisfied if the agency had presented evidence of "a long history of domestic violence between the parents" because "a child residing in a household where the parents' relationship is marred by domestic violence is one whose condition or environment is such as to warrant the state, in the interests of the child, to assume the child's guardianship." *Id.* at ¶ 58. *See also In re A.C.*, 6th Dist. No. L-10-1025, 2010-Ohio-4933, ¶ 94.

{¶23} In sharp contrast to the lack of evidence in the cases cited by Father, there was undisputed evidence presented at the adjudicatory hearing that J.G. had been exposed to a long history of domestic violence between Father and Step-mother and that those incidents often had included suicide threats by Step-mother. Several witnesses testified that, two days before J.G. was removed from the home, Step-mother had attempted suicide while both children and Father were in the home. Apparently attempting to convince authorities that Step-mother needed psychiatric help, Father recorded the incident. Father explained that his fights with Step-mother had often escalated to the point that she threatened suicide, but she would later deny that she made the threats and needed mental health treatment.

{¶24} Although Father's recording of Stepmother's suicide attempt was not introduced into evidence, the caseworker had seen the video and testified about it at the hearing. She described the scene in which Step-mother sat on a bed, threatening to attempt suicide by consuming a large quantity of pills, which she eventually did. To begin with, the caseworker

expressed concern that Father chose to record the incident rather than protect the children from exposure to the event, as it was apparent from the recording that they were present in the small home and witnesses to the entire incident.

{¶25} Although the children could not be seen in the video, they could be heard in the background. Father explained that he had stood in the doorway to prevent them from entering the room where Step-mother was sitting. Each child was obviously aware of what Step-mother was doing, however, because they could be heard pleading with her not to do it. Step-mother could be heard repeatedly stating, in apparent response to the pleas of the nine and ten-year-old children, that she had the right to kill herself. The caseworker described the children's pleas to Step-mother as repeated screams and observed that it was apparent that they were "very, very afraid." J.G. later told the caseworker that the incident had scared him.

{¶26} In addition to the recent suicide attempt, the evidence was not disputed that there had been many fights between Father and Step-mother that had included Step-mother threatening suicide in the presence of the children. The caseworker testified that CSB already had a voluntary case plan with this family due to the domestic violence in the home. Although she did not detail specific incidents of violence, a witness from the sheriff's department testified that, during the weekend preceding the removal of the children, the sheriff's department had been dispatched to the home repeatedly to respond to domestic violence between Father and Step-mother. As the witness explained, the sheriff's office often played the role of "peace maker" to intervene in the couple's quarrels and physically separate them.

{¶27} Father testified in more detail about the ongoing violence in his relationship with Step-mother and that she often had made suicide threats in front of the children. Father admitted that, during his three-year marriage to Step-mother, they often fought and their fights often

became "very heated" and required intervention by law enforcement officers. Although only Step-mother had been criminally charged as a result of the fights at their current home, Father had been convicted of domestic violence against Step-mother on three prior occasions.

{¶28} Father admitted that J.G. had been exposed to repeated incidents of domestic violence in the home, that he had heard Step-mother threaten suicide more than once, and that the incidents had been emotionally "disturbing" for J.G. Father further testified that Step-mother's daughter had been so disturbed by the frequent suicide threats that the child refused to leave her mother's side.

{¶29} Based upon the undisputed evidence before the trial court about J.G.'s ongoing exposure to domestic violence and suicide threats in his home, Father's argument that there was an absence of clear and convincing evidence to support a finding of dependency pursuant to R.C. 2151.04(C) is not well-taken. Father's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FAILURE TO ISSUE WRITTEN FINDINGS OF FACT STATING THE REASONS SUPPORTING ITS 'REASONABLE EFFORTS' DETERMINATIONS CONSTITUTES PREJUDICIAL AND REVERSIBLE ERROR AS A MATTER OF LAW.

{¶30} Father's second assignment of error is that the trial court's determinations that CSB made reasonable efforts to prevent the continued removal of J.G. from the home failed to comply with the requirements of R.C. 2151.419. R.C. 2151.419(A)(1) required the trial court to determine whether CSB had made reasonable efforts "to eliminate the continued removal" of J.G. from his home "or to make it possible for [him] to return safely home" "at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]" The hearings listed include the

adjudicatory and dispositional hearings. R.C. 2151.419(A)(1); *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41.

{¶31} At issue on appeal, R.C. 2151.419(B)(1) additionally provides that, when making those required reasonable efforts findings, the court "shall issue written findings of fact setting forth the reasons supporting its determination." Specifically, it must "briefly describe in its findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." *Id.*

{¶32} Father asserts that, in its adjudicatory and dispositional orders, although the trial court explicitly determined that the agency had exerted "reasonable efforts," it did not set forth the requisite factual findings to support its reasonable efforts determinations. This Court agrees.

{¶33} In its adjudicatory order, the trial court found, without any further explanation, that CSB had made reasonable efforts to prevent the removal of J.G. from his home. Likewise, in its dispositional order, the court found that "CSB has made reasonable efforts to eliminate the continued removal of the child from his home." Neither order includes any findings by the trial court to describe "the relevant services provided by the agency" or "why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." R.C. 2151.419(B)(1).

{¶34} Although this Court has not recently addressed this issue, it recognized many years ago that R.C. 2151.419(B)(1) requires the trial court to make explicit findings to support its reasonable efforts determinations after each of the hearings set forth in R.C. 2151.419(A)(1). *Oliver v. Nuzzo*, 9th Dist. No. 91CA005056, 1991 WL 217032, *2 (Oct. 23, 1991). More recently, several other appellate districts have held that R.C. 2151.419(B)(1) requires the trial

court to set forth explicit findings and that its failure to do so constitutes reversible error. *See, e.g.*, *In re D.V.*, 6th Dist. No. L-08-1228, 2009-Ohio-2924, ¶ 10; *In re Kyle*, 5th Dist. No. 2008 AP 01 0002, 2008-Ohio-5892, ¶ 34-36; *In re J.M.*, 12th Dist. Nos. CA2006-11-096, 2007-Ohio-4219, ¶ 17-21.

{¶35} CSB argues that this Court should affirm the trial court's decision, despite its failure to make the requisite findings, because the evidence at both hearings supported the trial court's reasonable efforts determination. The agency cites only one case that even arguably supports its argument, *In re Pieper Children*, 85 Ohio App.3d 319, 325-326 (12th Dist. 1993). This Court is not bound by that decision, nor is it persuaded by it. A trial court's failure to make the requisite findings not only disregards a clear legislative directive contained in the statute, it also undermines an obvious purpose of making the required findings, which is to facilitate appellate review of the trial court's reasonable efforts determination. *See In re D.V.*, 2009-Ohio-2924, at ¶ 10. "Even when this Court must examine the record, it does so with a different focus than the trial court." *In re E.T.*, 9th Dist. No. 22720, 2005-Ohio-6087, ¶ 15, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360 (1992). As an appellate court, this Court's role is to "review" the factual findings of the trial court, not to make factual findings in the first instance. *In re E.T.* at ¶ 15.

{¶36} Moreover, the Twelfth District has not continued to follow the limited reasoning on this issue that it articulated in *Pieper*. Instead, more recently it has found that the trial court's failure to set forth the findings required by R.C. 2151.419(B)(1) constituted reversible error. *In re S.W.*, 12th Dist. Nos. CA2006-09-211 and CA2006-10-263, 2008-Ohio-1194, ¶ 14-15; *In re J.M.*, 2007-Ohio-4219, at ¶ 17-21. This Court agrees with the prevailing case law that R.C. 2151.419(B)(1), by its clear and explicit terms, requires the trial court to support its reasonable

efforts determinations by articulating the services provided by the agency that were relevant to that determination and why those services failed to enable a reunification of the family. Because the trial court failed to set forth those findings in either its adjudicatory or dispositional orders, Father's second assignment of error is sustained.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF FATHER IN PERMITTING A TESTIFYING WITNESS OF [CSB] TO READ A REPORT BY A NON-TESTIFYING, PRESUPPOSED MENTAL HEALTH PROFESSIONAL INTO THE RECORD AT THE DISPOSITIONAL HEARING AND THIS COURT SHOULD, CONSEQUENTLY, REVERSE THE TRIAL COURT'S DECISION FOUNDED UPON SUCH TESTIMONY.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF FATHER IN PERMITTING A WITNESS OF [CSB] TO FREELY CONSULT HER NOTES AND/OR READ THEM INTO THE RECORD AT THE DISPOSITIONAL HEARING AND THIS COURT SHOULD, CONSEQUENTLY, REVERSE THE TRIAL COURT'S DECISION FOUNDED UPON SUCH TESTIMONY.

**{¶37}** This Court will address Father's third and fourth assignments of error together because they both challenge the testimony of CSB's caseworker during the dispositional hearing. Specifically, Father argues that the trial court erred in allowing the caseworker to testify about the contents of the psychological evaluations performed on Father and Mother and about the contents of her own notes about this case. In addition to alleged hearsay problems with the evidence, Father contends that the trial court failed to provide him an opportunity to inspect the documents about which the caseworker testified.

**{¶38}** Unlike the adjudicatory hearing, however, the rules of evidence do not apply at dispositional hearings, aside from hearings on motions for permanent custody. Juv.R. 34(B)(2). The trial court is permitted to admit all evidence "that is material and relevant, including, but not

limited to, hearsay, opinion, and documentary evidence[.]" *Id*. As the Supreme Court emphasized in *In re Baby Girl Baxter*, 17 Ohio St. 3d 229 (1985), the sole focus of the dispositional hearing is the best interest of the child. *Id.* at 233. Aside from requiring sworn witness testimony, the hearing is informal and most probative evidence is admissible. *See In re Fleming*, 8th Dist. No. 63911, 1993 WL 277186, *9 (July 23, 1993). Consequently, to the extent the trial court allowed the caseworker to testify about the hearsay contents of the psychological reports, Father has failed to demonstrate error. Father further argues that the trial court erred in failing to allow him to inspect the documents to which the caseworker referred. Although Father objected to the admission of this testimony by the caseworker, there is nothing in the record to demonstrate that he actually requested permission to examine those documents or that his request to examine them was denied. Father's third and fourth assignments of error are overruled.

ASSIGNMENT OF ERROR V

> THE TRIAL COURT ABUSED ITS DISCRETION IN REQUIRING FATHER TO UNDERGO A SUBSTANCE ABUSE ASSESSMENT AND/OR UNDERGO SUBSTANCE ABUSE TREATMENT AS PART OF THE CASE PLAN AND THIS COURT SHOULD REVERSE THE TRIAL COURT'S ADOPTION OF THE CASE PLAN TO THE EXTENT OF THE REQUIREMENT.

{¶39} Through his fifth assignment of error, Father challenges a requirement of the case plan that he undergo a substance abuse assessment and follow any resulting treatment recommendations. This Court will not reach the merits of this assignment of error because it is without jurisdiction over that aspect of the trial court's order.

{¶40} Pursuant to Atricle IV, Section 3(B)(2) of the Ohio Constitution, this court's appellate jurisdiction is limited to the review of final judgments of the trial court. Father has appealed from a final, appealable order insofar as the trial court adjudicated J.G. a dependent child and later placed him in the temporary custody of CSB. *In re B.M.*, 9th Dist. Nos.

12CA0009, 12CA0010, 12CA0011, and 12CA0012, 2012-Ohio-4093, ¶ 22, citing *In re Murray,* 52 Ohio St.3d 155 (1990), syllabus; R.C. 2505.02 and 2501.02. In *In re B.M.*, in which parents appealed from an adjudication and disposition and similarly attempted to challenge a case plan requirement that the mother undergo a psychological assessment, this Court concluded that it lacked jurisdiction to review that aspect of the trial court's order. Id. at ¶ 22-24. Specifically, the case plan requirement did not affect the parent's substantial rights and determine the action with respect to those rights. *Id*. at ¶ 24. The adjudication of dependency and disposition of temporary custody is immediately appealable pursuant to R.C. 2501.02 because the adjudication significantly affects the parent's constitutional rights and the "temporary" disposition could potentially keep the child out of the home for up to two years. *Id*. at ¶ 22. Requirements of the case plan, however, do not possess the same indicia of finality. *Id*. at ¶ 23; *see also Myers v. Toledo*, 110 Ohio St.3d 218, 2006–Ohio–4353, syllabus (applying similar reasoning to a court order that a Workers' Compensation claimant undergo a physical examination). Therefore, because this Court is without jurisdiction over this interlocutory aspect of the trial court's order, it will not reach the merits of Father's fifth assignment of error.

### III.

{¶41} Father's second assignment of error is sustained. This Court is without jurisdiction to address his fifth assignment. Father's remaining assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed in part, reversed in part, and the cause remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
WHITMORE, P. J.
CONCUR

APPEARANCES:

MATTHEW CRAIG, Attorney at Law, for Appellant.

JENNIFER ROBERTS, Attorney at Law, for Appellee.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.

TAMARA J. STANFORD, Attorney at Law, for Appellee.

TERESA BARRINGTON, Guardian ad litem.