[Cite as *In re N.J.*, 2017-Ohio-7466.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF: N.J., et al.          :

:          CASE NOS. CA2016-10-086
                              CA2016-10-090
:                          CA2016-10-091

:                          O P I N I O N
                              9/5/2017
:

:

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 16-D000079

Robyn W. Cambron, 5260 Indian Run, Cincinnati, Ohio 45243, for children

Jeffrey W. Stueve, 301 East Silver Street, Lebanon, Ohio 45036, for appellant T.H.

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee Warren County Children's Services

David E. Smith, 251 West Central Avenue, #235, Springboro, Ohio 45066, for N.J.

**M. POWELL, J.**

{¶ 1} Appellant, T.H. (Mother), appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, adjudicating her children abused and dependent.

{¶ 2} Mother and N.J. (Father) are the parents of three minor children, K.J., Ni.J., and Ne.J. Mother and the children reside together in an apartment; Father lives nearby. Mother works 40 hours a week. Father watches the children in their home when Mother is at work.

The children's paternal grandmother (Grandmother) lives nearby and frequently visits the children in their home.

{¶ 3} On June 9, 2016, Grandmother went to Mother's home around noon. Mother was at work, Father was on the phone, K.J. and Ne.J. were asleep, and Ni.J. was sitting on the floor against a wall. At the time, K.J. was six years old, Ni.J. was four years old, and Ne.J. was 11 months old. After Father left the apartment to pick up Mother from work, Ni.J. got up and walked toward Grandmother. Upon noticing that Ni.J. was limping, Grandmother asked him to pull down his pants. When he did so, Grandmother observed bruises and marks, primarily on the left side of his body around the rib cage and buttocks. Grandmother also noticed welts on Ni.J.'s penis and that his penis was "ridiculously swollen." Suspecting that Father was the perpetrator of the abuse, Grandmother immediately called 9-1-1 and reported, "my grandbaby was abused."

{¶ 4} Lebanon Police Officer Christopher Brock responded to the scene. Officer Brock is an experienced police officer whose training includes child abuse investigation, forensic interview of children, and evidence collection. The officer spoke with Grandmother who was visibly upset and crying. Grandmother showed the officer Ni.J.'s injuries. Officer Brock observed old injuries and scars on Ni.J.'s shoulders, lower back, forehead, and head. He further observed red, raised, fresh welts on Ni.J.'s torso. Several of the welts were "half-moon" shaped. Based upon his training and experience, the "half-moon" shape of the welts indicated to Officer Brock that Ni.J. had been struck with something that had been "doubled-over." Regarding some of Ni.J.'s injuries, the officer also observed what he believed to be the transfer of "finish" from an HDMI cable found in the home. Upon pulling down Ni.J.'s pants, the officer observed additional bruising, "a lot of redness," and numerous half-moon shaped welts on Ni.J.'s thighs and lower abdomen. Additionally, Ni.J.'s penis was very

swollen, red, and bleeding and there was blood in Ni.J.'s underwear.

{¶ 5} Officer Brock asked Ni.J. "who did this" and "with what." Ni.J. and his brother K.J. responded by retrieving a leather belt with a buckle and a doubled-over HDMI cable from an upstairs bedroom. Neither K.J. nor Ne.J. displayed signs of physical injury. Nevertheless, Grandmother took K.J., Ni.J., and Ne.J. to the hospital for examination.

{¶ 6} Upon learning that Father had an outstanding arrest warrant, Officer Brock arranged for Father to be arrested prior to his return to Mother's home. Upon being arrested, Father was brought to the Lebanon Police Department and questioned regarding Ni.J.'s injuries. Father admitted "whooping" Ni.J. that day for sneaking food out of the refrigerator after being told several times not to and for urinating on himself. Father told the police he struck Ni.J. five times with a belt. Father however denied using the HDMI cable on Ni.J. Father stated he believed in whipping his children and that he had a strict "three strikes and you're out policy."

{¶ 7} Later that day, Warren County Children Services ("WCCS") supervisor Ashley Stutzman and a caseworker met with Mother at her home. Upon learning there were allegations of physical abuse regarding her children, Mother replied, "my children are disciplined; they're not abused." Stutzman then informed Mother of Ni.J.'s injuries. Mother denied seeing any injuries the previous night when she bathed Ni.J. Mother stated that she had been at work since 4:00 a.m. that day and that Father was watching the children as he customarily does during her 40-hour work week. Mother told Stutzman that the children are typically disciplined with two to three whippings with a belt, or by writing sentences, doing push-ups or sit-ups, or by verbal counselling. Mother stated that both she and Father administer discipline to the children. Mother admitted she had concerns with Father's discipline of the children, believing it was too rough, and that she had noticed marks on

- 3 -

Ni.J.'s back in the past. Mother further admitted she had spoken with Father about her concerns that he was too rough with the children. Following this interview, Mother agreed to a safety plan for the children to be removed from her home and placed with Grandmother.

**{¶ 8}** Other family members also expressed concerns with the manner in which Father disciplined the children. Father's sister stated that she regularly visits the home, had previously noticed a mark on Ni.J., and had spoken with Father about being too rough and strict with the children. Grandmother stated that it had been going on for years, that Ni.J. always had bruises on his forehead and scars on his body, and that these concerns led her to frequently visit the children. Grandmother stated she had discussed her concerns with Father about two years ago. Grandmother further stated that she had called WCCS in the past but only asked general questions, and that she had called police to report the abuse but hung up before speaking with anyone. Grandmother admitted that her failure to follow through with these calls was because she feared Father would be sent to prison.[1]

**{¶ 9}** Concerned that Mother and other family members were unable or unwilling to protect the children from Father, given the family's knowledge of Father's rough manner of disciplining the children, the family's failure to report Father to the proper authorities, and Mother's routine of leaving the children in Father's care during her work week, WCCS filed complaints on June 10, 2016, alleging that K.J., Ni.J., and Ne.J. were abused children under R.C. 2151.031(B), (C), and (D), and dependent children under R.C. 2151.04(C) and (D), and moved for temporary custody. The safety plan was terminated and the children were placed in foster care together.

**{¶ 10}** On August 19, 2016, and September 2, 2016, a magistrate held an adjudicatory hearing and on September 15, 2016, entered an order finding that K.J., Ni.J., and Ne.J. were

---

1. Father was subsequently convicted of two counts of felony child endangering and sentenced to a prison term for his abuse of Ni.J.

abused children under R.C. 2151.031 and dependent children under R.C. 2151.04(C) and (D).[2] Following a dispositional hearing, all parties agreed it was in the children's best interest to remain in the temporary custody of WCCS. Mother subsequently moved to set aside the magistrate's order adjudicating K.J., Ni.J., and Ne.J. as abused and dependent children. Mother argued that none of the children were dependent children under R.C. 2151.04, and that neither K.J. nor Ne.J. were abused children under R.C. 2151.031. On September 27, 2016, the juvenile court denied Mother's motions to set aside the magistrate's order and adopted the magistrate's order as an order of the juvenile court.

{¶ 11} Mother now appeals, challenging the adjudication of K.J. and Ne.J. as abused children and K.J., Ni.J., and Ne.J. as dependent children in two assignments of error. Mother does not appeal the adjudication of Ni.J. as an abused child.

{¶ 12} The state bears the burden of proof of establishing that a child is an abused or dependent child. "A trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence." *In re T.B.*, 12th Dist. Fayette No. CA2014-09-019, 2015-Ohio-2580, ¶ 12, citing R.C. 2151.35(A). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. * * * It does not mean clear and *unequivocal*." (Emphasis sic.) *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 13} With regard to construing the statutes involved here, R.C. 2151.01(A) provides

---

2. It is not apparent why the magistrate decided the matter pursuant to a "magistrate's order" as opposed to a "magistrate's decision." Juv.R. 40(D)(2)(a)(i) restricts "magistrate's orders" to "[regulating] the proceedings" and specifically provides that a "magistrate's order" may not be "dispositive of a claim or defense of a party." Obviously, the September 15, 2016 "Magistrate's Order" disposed of the state's claims and Mother's defenses. The designation is significant because the time to set aside a "magistrate's order" is 10 days whereas the time to object to a "magistrate's decision" is 14 days. Juv. R. 40(D)(2)(b) and (3)(b)(i). Although this is not a significant issue in this case, the September 15, 2016 adjudication of the children as abused and dependent by "magistrate's order" is incorrect. The designation of a magistrate's determination of an issue as a "magistrate's order" or "magistrate's decision" is not merely a matter of form, but rather one of substance.

The sections in [R.C.] Chapter 2151 * * * shall be liberally interpreted and construed so as to effectuate the following purposes: To provide for the care, protection, and mental and physical development of children subject to [R.C.] Chapter 2151, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.

{¶ 14} With these guiding principles in mind, we turn to Mother's assignments of error.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED BY ADJUDICATING THE MINOR CHILDREN DEPENDENT.

{¶ 17} Mother argues the juvenile court erred in adjudicating K.J., Ni.J., and Ne.J. as dependent children under R.C. 2151.04(C) and (D).

**Adjudication of K.J. and Ne.J. as Dependent Children under R.C. 2151.04(C)**

{¶ 18} Mother first challenges the adjudication of K.J. and Ne.J. as dependent children under R.C. 2151.04(C). The statute defines a "dependent child" as "any child * * * [w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"

{¶ 19} The determination that a child is dependent requires no showing of fault on the parent's part. *In re T.B.*, 2015-Ohio-2580 at ¶ 20. Rather, the focus is on the child's condition or environment, and whether the child was without adequate care or support. *Id.* Thus, dependency under R.C. 2151.04(C) requires "evidence of conditions or environmental elements that were adverse to the normal development of the child." *In re E.R.*, 9th Dist. Medina No. 05CA0108-M, 2006-Ohio-4816, ¶ 13. However, a court may consider a parent's conduct insofar as it forms part of the child's environment. *In re T.B.* at ¶ 20; *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). A parent's conduct is significant if it has an adverse impact on the child sufficient to warrant intervention. *In re T.B.* at ¶ 20. "That impact cannot be simply

inferred in general, but must be specifically demonstrated in a clear and convincing manner." *In re Burrell* at 39.

{¶ 20} We have noted that R.C. 2151.04 is to be broadly applied to protect the health, safety, and welfare of children:

> While the child's present "condition or environment" is the focus of a dependency determination, "the law does not require the court to experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm." "[T]he child does *not* first have to be put into a particular environment before a court can determine that * * * [the] environment is unhealthy or unsafe."

(Emphasis sic.) *In re A.P.*, 12th Dist. Butler No. CA2005-10-425, 2006-Ohio-2717, ¶ 28, quoting *In re Burchfield*, 51 Ohio App.3d 148, 156 (4th Dist.1988), and *In re Campbell*, 13 Ohio App.3d 34, 36 (12th Dist.1983). In other words, actual harm to a child is not necessary. Rather, circumstances giving rise to a legitimate risk of harm may suffice to support an adjudication of dependency under R.C. 2151.04(C).

{¶ 21} The evidence discloses that Father ruled the children with "an iron fist" and that he had a "three strikes and you're out" discipline policy. In Father's words, when a child gets "three strikes," the child "get[s] a whipping." Father's discipline of the children was extreme. All the children were subject to being whipped with a belt if Father or Mother deemed it necessary. Mother and family members were aware of Father's propensity to administer excessive discipline to the children, had spoken with him about it to no avail, and had failed to act to protect the children. In fact, despite her concerns about Father, Mother left the children alone with Father for 40 hours each week while she worked. K.J. and Ne.J. were present in the home on June 9, 2016, when Father beat Ni.J.

{¶ 22} Mother argues there was insufficient evidence to adjudicate K.J. and Ne.J. dependent children under R.C. 2151.04(C) because the adjudications were based entirely

and solely upon the physical abuse suffered by Ni.J.

{¶ 23} Although there was no evidence of specific incidents where K.J. and Ne.J. were disciplined excessively, testimony at the adjudicatory hearing shows that they were subject to discipline by Father and exposed to the discipline Father administered to the other children, including the beating Ni.J. received on June 9, 2016. There is authority that children present in a home where another child is abused may be dependent children under R.C. 2151.04(C). In finding that the abuse of one child may serve as the basis for a finding that the abused child's siblings were dependent under R.C. 2151.04(C), the Tenth Appellate District held, "Regarding the adjudication of M.G., C.G., and D.G. to be dependent minor children, we find that through establishing that M.E.G. had been sexually abused by her father, the state provided sufficient evidence to allow the trial court to find by clear and convincing evidence that the elements of R.C. 2151.04(C) were met." *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256 thru 06AP-1259, 06AP-1263 thru 06AP-1265, 2007-Ohio-4308, ¶ 62.

{¶ 24} Other cases support a finding of dependency under R.C. 2151.04(C) where children are exposed to domestic violence in the home. *See In re J.G.*, 9th Dist. Wayne No. 12CA0037, 2013-Ohio-417 (ongoing exposure of children to domestic violence in the home supported a finding of dependency under R.C. 2151.04[C]); *In re A.C.*, 6th Dist. Lucas No. L-10-1025, 2010-Ohio-4933. As the Sixth Appellate District stated,

> a long history of domestic violence between the parents can constitute the clear and convincing evidence necessary for a finding pursuant to R.C. 2151.04(C); that is, a child residing in a household where the parents' relationship is marred by domestic violence is one whose condition or environment is such as to warrant the state, in the interests of the child, to assume the child's guardianship.

*In re Alexander C.*, 164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 58 (6th Dist.).

{¶ 25} Although this case does not involve sexual abuse or domestic violence between

parents, the same logic applies where children reside in a household where a sibling is being physically abused by a parent. Because K.J. and Ne.J. reside in a home where they are at risk of physical abuse and are exposed to the physical abuse of a sibling, their condition or environment is such as to warrant the state, in their interests, in assuming their guardianship. The juvenile court, therefore, did not err in adjudicating K.J. and Ne.J. as dependent children under R.C. 2151.04(C).

**Adjudication of K.J. and Ne.J. as Dependent Children under R.C. 2151.04(D)**

{¶ 26} Mother next challenges the adjudication of K.J. and Ne.J. as dependent children under R.C. 2151.04(D). The statute defines a "dependent child" as "any child * * * [t]o whom both of the following apply":

> (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
>
> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶ 27} It is well-established that "the date on which dependency existed must be alleged in the complaint, and the trial court must determine that the circumstances which support a finding of dependency existed as of the date or dates alleged in the complaint." *In re S.H.*, 12th Dist. Butler No. CA2005-01-007, 2005-Ohio-5047, ¶ 9; R.C. 2151.23(A)(1).

{¶ 28} Mother argues that the determination as to whether a child is dependent must be made as of the date alleged in the complaint, and not as of the date of the adjudicatory hearing. Mother further argues that the language of R.C. 2151.04(D)(1) referring to an act of a parent or other household member that "*was* the basis for an adjudication" uses past

tense, and thus, necessarily and solely refers to an adjudication existing at the time the complaint is filed. Consequently, Mother asserts, because Ni.J. was not adjudicated abused and dependent as a result of Father's excessive discipline until after the dependency complaint regarding K.J. and Ne.J. was filed, K.J. and Ne.J. could not be adjudicated as dependent children under R.C. 2151.04(D). In support of her argument, Mother cites *In re S.L.*, 3d Dist. Union Nos. 14-15-07 and 14-15-08, 2016-Ohio-5000.

{¶ 29} In *In re S.L.*, the Third Appellate District addressed "whether R.C. 2151.04(D) can serve as the basis for an adjudication of dependency notwithstanding the absence – as of the filing of the complaint – of an adjudication of a sibling or other child in the household as abused, neglected, or dependent based on an act of a parent or other household member." *Id.* at ¶ 13. The appellate court held that

> R.C. 2151.04(D)(1) refers to "an act that *was the basis* for an adjudication." (Emphasis added.) The General Assembly chose the word "was," which is a past-tense verb. "The past tense indicates action already completed." In the context of R.C. 2151.04(D)(1), saying that an act *was the basis* of an adjudication requires there to have been a past adjudication. In other words, for an act to have been the basis for an adjudication, there must have been a prior adjudication that a sibling or other child residing in the household is an abused, neglected, or dependent child. Had the General Assembly intended to allow simultaneous adjudications–as the Agency argues–it would have used present-tense, not past-tense, language. Accordingly, because, under R.C. 2151.23(A)(1), the determination of dependency is made as of the date alleged in the complaint, the plain and unambiguous language of R.C. 2151.04(D)(1) requires that "a sibling of the child or any other child who resides in the household" be adjudicated abused, neglected, or dependent before the complaint is filed.

(Citations omitted.) *Id.* at ¶ 17.

{¶ 30} In his September 15, 2016 order, the magistrate declined to apply *In re S.L.*, finding its reasoning unpersuasive and finding instead that "the use of the words 'was the basis of' refers to the 'act,' not the adjudication. Put another way, the 'act that was the basis

for an adjudication' requires some form of conduct or act to occur prior to the complaint being filed."  In other words, the juvenile court ruled that as long as the act giving rise to the adjudication occurs before the R.C. 2151.04(D) dependency complaint is filed, then an adjudication subsequent to the filing of the complaint can satisfy the requirements under R.C. 2151.04(D)(1).

{¶ 31} In response to Mother's argument, the state cites cases in which children were adjudicated dependent under R.C. 2151.04(D) under circumstances similar to this case. However, those cases did not directly address the issue presented here and in *In re S.L.*, and lacked any analysis of the statute.  Apparently, no other courts have directly addressed the issue of whether the phrase "was the basis for an adjudication" in R.C. 2151.04(D)(1) refers to an existing adjudication of dependency, neglect, or abuse.

{¶ 32} "In construing a statute, the reviewing court must ascertain the intent of the legislature in enacting the statute.  To determine the intent of a statute, a court looks to the language of the statute, giving effect to the words used.  A court is neither to insert words that were not used by the legislature nor to delete words that were used."  (Citations omitted.) *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, ¶ 12.

{¶ 33} "When a word is not defined, we use its common, ordinary, and accepted meaning unless it is contrary to clear legislative intent.  We also read the word in context using rules of grammar and common usage."  (Citations omitted.)  *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 122 Ohio St.3d 557, 2009-Ohio-3628, ¶ 15, citing R.C. 1.42.

{¶ 34} R.C. 1.43(C) is a rule of construction regarding the "tense" used in statutes and provides that "[w]ords in the present tense include the future."  Notably absent is any

reference to "words in the past tense," leaving one to conclude that past-tense words are intended to refer to past events and nothing more.

{¶ 35} R.C. 2151.04(D)(1) requires the alleged dependent child to be "residing in a household in which a parent * * * or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child." Among the elements of the statute are (1) an act committed by a parent, and (2) an adjudication of dependency, neglect, or abuse based upon the act. As stated above, the juvenile court construed the past-tense language of the statute as applying to the act, and not to the adjudication. However, R.C. 2151.04(D)(1) applies past tense to both the act and the adjudication ("committed an act" and "was the basis for an adjudication"). The statutory language that the act must have been "committed" conveys the sense that the act was in the past. *See In re M.P.*, 2d Dist. Greene No. 2011 CA 71, 2012-Ohio-2334 (the use of the past tense by the General Assembly means that a modification of child custody under R.C. 3109.04 may be ordered only after a move from the state has already occurred). The subsequent statutory language that the past act "was" the basis for an adjudication of dependency, neglect, or abuse conveys the sense that the adjudication is a past judicial determination of the legal significance of the act.

{¶ 36} The state refers us to R.C. 2151.01(A) which directs that R.C. Chapter 2151 be liberally construed so as "to provide for the care, protection, and mental and physical development of children." The state argues that Mother's interpretation of R.C. 2151.04(D)(1) would give rise to situations where children would be subject to the risks from an abusive presence in their home, but the state would be powerless to intervene to protect them under R.C. 2151.04(D) during the time between the filing of a complaint alleging a sibling in the household is an abused child and the adjudication of abuse. The state's

argument in this regard is facially compelling.

{¶ 37} However, if R.C. 2151.04(D) is interpreted as primarily intending to provide protection to children who were not residents of the home at the time of the adjudication referred to in the statute and only enter the home after the adjudication, the untenable situation described in the preceding paragraph is not present. *See In re E. R.*, 2006-Ohio-4816 at ¶ 30 (the intent of R.C. 2151.04[D][1] is to protect the next child from a similar fate); *In re W.C.*, 9th Dist. Summit No. 22356, 2005-Ohio-2968, ¶ 18 ("It is clear that, with the addition of R.C. 2151.04[D], the legislature considered a parent's prior history with a child welfare agency significant in regard to a determination that a subsequent child might be dependent"). In this latter situation, R.C. 2151.04(D) provides a vehicle for state intervention to protect children who come to reside in a home with a person who has engaged in conduct resulting in a prior adjudication of neglect, dependency, or abuse and circumstances suggests these children are at risk due to the presence of that person. *See In re E.R.* at ¶ 31 ("children born after a sibling had been adjudicated abused, neglected or dependent and removed from the parents' home were properly found dependent pursuant to R.C. 2151.04[D]"); *In re S.M.*, 12th Dist. Madison No. CA2006-08-030, 2007-Ohio-2297, ¶ 17 (R.C. 2151.04[D][1] requires that a parent or a household member who resides in the same household as a child whose status is at issue, previously committed an act that resulted in an adjudication of neglect, abuse, or dependency regarding a sibling of that child). In addition, children such as K.J. and Ne.J. would not necessarily be denied the protection of the dependency statute as they could be adjudicated dependent under other sections of the statute, including R.C. 2151.04(C), as was the case here.

{¶ 38} Based upon the foregoing, we find that because a determination of dependency is made as of the date alleged in the complaint under R.C. 2151.23(A)(1), for a child to be

- 13 -

found dependent under R.C. 2151.04(D), R.C. 2151.04(D)(1) requires that a sibling of the child or any other child who resides in the household be adjudicated abused, neglected, or dependent before the dependency complaint for the child whose status is at issue is filed. No evidence was presented at the adjudicatory hearing that K.J., Ne.J., or any other child residing in the household was adjudicated abused, neglected, or dependent before the dependency complaints regarding K.J. and Ne.J. were filed on June 10, 2016. Rather, the juvenile court adjudicated Ni.J. as an abused and dependent child on September 2, 2016, in the same adjudicatory hearing it adjudicated K.J. and Ne.J. as dependent children under R.C. 2151.04(D). The juvenile court, therefore, erred in adjudicating K.J. and Ne.J. as dependent children under R.C. 2151.04(D).[3] However, such error is harmless error in view of our affirmance of K.J.'s and Ne.J.'s adjudications of dependency under R.C. 2151.04(C).

### Adjudication of Ni.J. as a Dependent Child under R.C. 2151.04

{¶ 39} Mother next challenges the adjudication of Ni.J. as a dependent child under R.C. 2151.04. Mother first argues the juvenile court erred in adjudicating Ni.J. a dependent child under R.C. 2151.04(D) given the lack of a predicate adjudication as required by R.C. 2151.04(D)(1) and the fact the abuse of Ni.J. cannot be the basis for a finding that he is dependent under R.C. 2151.04(D).

{¶ 40} As stated above, the magistrate's order, which was approved and adopted as an order of the juvenile court, adjudicated all three children as dependent children under R.C. 2151.04(D). The statute applies to children residing or having resided in the same household as the abused child and the abuser. Because Ni.J. was the abused child, R.C. 2151.04(D) does not apply to him. The juvenile court, therefore, erred in adjudicating Ni.J. as a

---

3. For a child to be adjudicated dependent under R.C. 2151.04(D), both subsections – R.C. 2151.04(D)(1) and (2) – must apply. Based on our conclusion that the state failed to meet its burden of proof regarding R.C. 2151.04(D)(1), we need not consider R.C.2151.04(D)(2). *In re S.L.*, 3d Dist. Union Nos. 14-15-07 and 14-15-08, 2016-Ohio-5000, ¶ 20, fn. 2.

dependent child under R.C. 2151.04(D).

{¶ 41} Mother further argues the juvenile court erred in adjudicating Ni.J. as a dependent child under R.C. 2151.04(C) because Father was incarcerated as of the date of the complaint, there was no evidence that Ni.J. lacked proper parental care from Mother, and the conditions of the home presented no risk to Ni.J.'s health, safety, or welfare.

{¶ 42} As stated above, "a court may consider a parent's conduct insofar as it forms part of the child's environment. A parent's conduct is significant if it has an adverse impact on the child sufficient to warrant intervention." *In re T.B.*, 2015-Ohio-2580 at ¶ 20. Ni.J. was physically abused by Father under the guise of discipline. Mother was aware of the abuse, yet did not act to protect Ni.J. Indeed, Mother's leaving Ni.J. in Father's care while she worked served to expose Ni.J. to physical abuse by Father. That Father was incarcerated as of the filing of the complaint does nothing to detract from the significance of the foregoing facts, all of which existed as of the time of the filing of the complaint. Father's physical abuse of Ni.J. formed a part of Ni.J.'s "condition or environment" as provided in R.C. 2151.04(C).

{¶ 43} Father's abuse of Ni.J. may serve concurrently as the basis for an adjudication of abuse and dependency under R.C. 2151.031(C) and R.C. 2151.04(C), respectively. Notwithstanding multiple adjudications, there is only one disposition. The juvenile court, therefore, did not err in adjudicating Ni.J. as a dependent child under R.C. 2151.04(C).

{¶ 44} Mother's first assignment of error is sustained in part and overruled in part.

{¶ 45} Assignment of Error No. 2:

{¶ 46} THE TRIAL COURT ERRED BY ADJUDICATING THE MINOR CHILDREN K.J. AND Ne.J. ABUSED.

{¶ 47} Mother argues the juvenile court erred in adjudicating K.J. and Ne.J as abused children under R.C. 2151.031(B), (C), and (D), as alleged in the complaints. As pertinent to

- 15 -

Mother's argument, R.C. 2151.031 defines an "abused child" as any child who

> (B)  Is endangered as defined in [R.C.] 2919.22, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;
>
> (C)  Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it.  Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent * * * is not an abused child under this division if the measure is not prohibited under [R.C.] 2919.22.
>
> (D)  Because of the acts of his parents, * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare.

{¶ 48} As stated above, the complaints alleged that K.J. and Ne.J. were abused children under R.C. 2151.031(B), (C), and (D).  In the "Law" section of the magistrate's order, the magistrate discusses what is provided in each of these subsections and notes that during the adjudicatory hearing, the "State argues that [K.J.] and [Ne.J.] are abused pursuant to [R.C.] 2151.031(B) and (C)."  Noticeably, the magistrate did not mention that the state claimed K.J. and Ne.J. to be abused children under R.C. 2151.031(D), as alleged in the complaint.  In the "Decision" section of the magistrate's order, the magistrate "finds the minor children * * * to be abused pursuant to O.R.C. 2151.031," without specifying the subsections of R.C. 2151.031 serving as the basis of the adjudications.  The juvenile court's judgment entry denying Mother's motions to set aside the magistrate's order and adopting and approving the magistrate's order as an order of the juvenile court did not further address the subsections of R.C. 2151.031under which K.J. and Ne.J. were adjudicated abused children.  However, in announcing the adjudication in open court, the magistrate stated that K.J. and Ne.J. were adjudicated as abused children solely under R.C. 2151.031(B).[4]  Due to the lack

---

4. Based upon our review of the record, the evidence does not support the adjudications of K.J. and Ne.J. as abused children under R.C. 2151.031(C) and (D) as these subsections require evidence of physical or mental

- 16 -

of specificity as to the basis upon which K.J. and Ne.J. were adjudicated abused children in the magistrate's order and the judgement entry approving it, we rely upon the magistrate's stated basis for the adjudications made at the conclusion of the adjudicatory hearing, and only address the juvenile court's adjudication of K.J. and Ne.J. as abused children under R.C. 2151.031(B).

{¶ 49} R.C. 2151.031(B) defines an abused child as any child who is endangered as defined in R.C. 2919.22.  In turn, R.C. 2919.22 provides in relevant part that

> (A)  No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.  * * *
>
> (B)  No person shall do any of the following to a child under eighteen years of age * * *:
>
> (1)   Abuse the child;
>
> (2)   Torture or cruelly abuse the child;
>
> (3)  Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;
>
> (4)   Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development [.]

{¶ 50} As stated above, the magistrate's order did not discuss the reasoning underlying the determination that K.J. and Ne.J. were abused children under R.C. 2151.031(B).  There was no evidence at the adjudicatory hearing that K.J. and Ne.J. were themselves abused, tortured, or subjected to excessive or unwarranted corporal punishment.

---

injury.  As discussed later in the opinion, there was no evidence that K.J. or Ne.J. suffered from or displayed evidence of physical or mental injury.

R.C. 2919.22(B) therefore does not apply.  Presumably, the juvenile court found that Mother permitted K.J. and Ne.J. to reside in a home with a physically abusive parent and took no efforts to protect them, thus "[creating] a substantial risk to the health or safety of the child[ren], by violating a duty of care, protection, or support" under R.C. 2919.22(A).

{¶ 51} R.C. 2912.22(A) embodies the well-established principle that parents have a legal duty to protect their children from harm.  *State v. Kamel*, 12 Ohio St.3d 306, 309 (1984); *Couch v. Harrison*, 12th Dist. Clermont No. CA2000-08-063, 2001 Ohio App. LEXIS 651, *6 (Feb. 12, 2001).  Because there is an affirmative duty to protect children from harm, "an inexcusable failure to act in the discharge of [that] duty * * * where such failure to act results in a substantial risk to the child's health or safety" constitutes an "act" under R.C. 2912.22. *Kamel* at 309; *Couch* at *6.

{¶ 52} Mother's act of leaving the children in the care of a physically abusive parent for long periods of time with knowledge of his propensity to administer severe and disproportionate discipline is concerning.  Certainly, the presence of children in an abusive home satisfies the elements for dependency under R.C. 2151.04(C) as a "condition or environment" warranting state intervention.  However, unlike dependency under R.C. 2151.04(C), abuse under R.C. 2151.031(B) and 2919.22(A) requires clear and convincing evidence that there is a "substantial risk to the health or safety" of the children.  "Substantial risk" means "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."  R.C. 2901.01(A)(8).

{¶ 53} As the party seeking adjudication of K.J. and Ne.J., the state bears the burden of establishing abuse by clear and convincing evidence.  There was no evidence at the adjudicatory hearing that K.J. and Ne.J. were abused or subjected to excessive corporal punishment.  Although the WCCS supervisor observed an inch-long scar on Ne.J.'s leg on

the day of the incident, neither K.J. nor Ne.J. exhibited any signs of physical abuse. There was also no testimony that K.J. or Ne.J. had previously exhibited signs of physical abuse. While there was testimony that family members had seen "marks" on the "children" in the past, the testimony referred to Ni.J. or did not identify the child or children to which the testimony referred. Thus, this testimony may not serve as evidence that K.J. or Ne.J. had suffered prior physical abuse. Furthermore, there was also no evidence that K.J. and Ne.J. were at risk for or suffered from any mental injury as a result of Father's behavior.[5] Under such circumstances, there is simply no clear and convincing evidence that K.J. and Ne.J. were abused children under R.C. 2151.031(B). The juvenile court, therefore, erred in adjudicating K.J. and Ne.J. as abused children under R.C. 2151.031(B).

{¶ 54} Mother's second assignment of error is well-taken and sustained.

{¶ 55} Based upon the foregoing, we affirm the juvenile court's adjudication of K.J., Ni.J., and Ne.J. as dependent children under R.C. 2151.04(C) but reverse and vacate the juvenile court's adjudication of all three children as dependent children under R.C. 2151.04(D). We further reverse and vacate the juvenile court's adjudication of K.J. and Ne.J. as abused children under R.C. 2151.031(B).

{¶ 56} Judgment affirmed in part and reversed in part.

HENDRICKSON, P.J. and S. POWELL, J., concur.

---

5. The state asserts there was evidence K.J. and Ne.J. suffered mental injury as a result of Father's discipline and refers us to a succinct portion of Grandmother's testimony at the adjudicatory hearing. Grandmother testified she was concerned about "mental abuse" because Father gave timeouts that were too long given the children's ages, and "made them do push-ups. He would make them – he's not in the mood to learn no ABCs, so you don't pressure and push people." Without minimizing the sincerity of Grandmother's concerns, such concerns do not establish that K.J. or Ne.K. suffered emotional harm due to Father's strict disciplinary practices.