[Cite as *In re J.S.*, 2024-Ohio-773.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE:                                    :

J.S.                                      :        CASE NO. CA2023-01-006

                                          :        O P I N I O N
                                                   3/4/2024
                                          :

                                          :

                                          :


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2022JC05514


Denise S. Barone, for appellant.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee, Clermont County Children Services.


**BYRNE, J.**

{¶ 1}   "Mother," the biological mother of J.S. ("Jonathan"), a minor child, appeals from the decision of the Clermont County Court of Common Pleas, Juvenile Division, which found Jonathan dependent and granted temporary custody of Jonathan to Clermont County

Children Services ("the Agency").[1]  For the reasons described below, we affirm.

## I.  Factual and Procedural Background

{¶ 2}  In July 2022, the Agency filed a complaint in the juvenile court alleging that Jonathan, born just four days earlier, was a dependent child pursuant to R.C. 2151.04(C). That statute defines a "dependent child" as, among other options, "any child * * * Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship * * *."

{¶ 3}  The complaint alleged that Jonathan's biological father ("Father") was incarcerated.  The complaint alleged that Mother had two other children currently in the Agency's temporary custody.  Mother's case plan for reunifying with those children involved resolving issues with drug abuse, housing, income, and parenting.  Mother had completed inpatient drug treatment and had been living for a brief time with her grandparents.  Mother had just recently been attending virtual visits with the other children and had had no in-person visits.  As such, the Agency had not observed her with her other children.  The Agency requested that the court grant it temporary custody of Jonathan.

{¶ 4}  On the same day as the filing of the complaint, the court held a shelter care hearing and subsequently granted the Agency temporary custody of Jonathan.  The court scheduled an adjudication hearing.

{¶ 5}  On August 4, 2022, the Agency filed a case plan for reunifying Mother and Jonathan.  The document was titled "Family Case Plan" with the subtitle "Updated Family Case Plan Number: 1.03."  The first page of the document stated, "Update Reason(s)" and then listed "Visitation Plan."  The first page of the document also indicated that the "Reason for Change(s)" was that Jonathan had been added to the case plan following his birth.

---

1.  "Jonathan" is a pseudonym adopted in this opinion for purposes of privacy and readability.  *In re D.P.*, 12th Dist. Clermont Nos. CA2022-08-043 and CA2022-08-044, 2022-Ohio-4553, ¶ 1, fn. 1.

Mother's other two children from her preexisting custody case were listed on this case plan.

**A. Adjudication Hearing**

{¶ 6}    The court, through its magistrate, subsequently held an adjudication hearing. At the hearing, the Agency called its case worker to testify. Mother and Father also testified. We summarize the relevant testimony below.

**1. Carla Perla Severini's Testimony**

{¶ 7}    Carla Perla Severini testified that she was an Agency case worker assigned to Jonathan's case. Severini explained that Mother had previously lost custody of her older two children because she was actively using illegal substances. The Agency became involved when Mother left those children at her father's house and her father subsequently reported to the Agency that he could not care for the children. After the Agency received custody of the older children in November 2021, it placed the children in foster care. At the time, both children were struggling behaviorally, acting out, wetting the bed, and did not appear to have any "kind of routine."

{¶ 8}    Severini also explained that, as part of the Mother's case plan for reunification with her older children, as well as a term of her probation in a criminal case, Mother attended inpatient drug treatment at the Phoenix Center. She was at the Phoenix Center from February 2022 until she successfully completed the program there in June 2022. Since leaving inpatient care, Mother had remained sober (testing negative on drug screens) and continued to attend outpatient drug treatment. She also explained that Mother had just recently—that is, before the adjudication hearing—started visiting with her older children.

{¶ 9}    Severini testified that Mother, as of the date of the adjudication hearing in this case, was unemployed and her housing situation had changed a "couple" of times since she completed the inpatient treatment program with the Phoenix Center.

{¶ 10}  Severini explained that Mother had most recently moved in with her father and

stepmother.[2] Severini had not visited the father's home but a coworker had and it appeared to the coworker that the home was not appropriate for children. The Agency's other concern with this home was that it was the same home where Mother's older children had been removed after she left them in the care of her father and stepmother.

{¶ 11} Severini noted that Mother had a hearing in a criminal case scheduled for the month after the adjudication hearing. The charge was aggravated possession of drugs.

{¶ 12} Severini acknowledged that Mother was currently working on completing outpatient drug treatment and was working on reunifying with her older children. She believed that Mother had made progress on her case plan for reunification, but that Mother was not yet at the point of receiving custody of her older children. As such, the Agency felt that Jonathan was at risk if returned to Mother's care. The Agency placed Jonathan in the same foster home as his siblings.

{¶ 13} During Mother's attorney's cross-examination of Severini, the following exchange occurred:

> Mother's attorney: All right, so you wouldn't have removed the baby from the hospital under just this fact pattern if there hadn't been two older children already in the Agency's care?
>
> Severini: I mean I guess I can say that, yes.

### 2. Mother's Testimony

{¶ 14} Mother testified that she currently lived with her father and stepmother in a home in Georgetown, Ohio. The home had a roof and food, and her bed and Jonathan's crib were in the same room.

{¶ 15} Mother stated she had been sober since "November" (presumably November of 2021), when she was arrested. She was at the Phoenix Center for four months and

---

2. Mother's stepmother was variously referred to in these proceedings as her "stepmother," as her father's "girlfriend," or as his "paramour." We will refer to her as Mother's "stepmother."

graduated.

{¶ 16} Jonathan was born by cesarean section and she was still recovering from the surgery. However, she had applied for a job at a local grocery store the day before the hearing. She was still nursing Jonathan when he was removed from her care.

{¶ 17} On cross-examination, Mother stated that she had two upcoming court appearances in criminal matters. One was for her indictment for aggravated possession of drugs. The other was for a probation violation due to her not reporting while she was at the Phoenix Center. On the aggravated possession of drugs charge, Mother stated that an arrest warrant had been issued in November 2021. She turned herself in at that time and spent about two weeks in jail. She was indicted in June 2022. She was set to enter a plea at her upcoming court hearing in that case.

### 3. Father's Testimony

{¶ 18} Father testified remotely from prison. He explained that he was in prison for aggravated possession of drugs.

### B. Magistrate's Adjudication Decision

{¶ 19} The magistrate issued an adjudication decision finding that Jonathan was a dependent child. Regarding Father, the magistrate noted that he was incarcerated. Regarding Mother, the magistrate found that she had a history of drug addiction and that she had completed inpatient treatment in June 2022. The magistrate noted that Mother had less than 60 days of sobriety since emerging from the controlled environment of an inpatient center, and concluded that Mother's ability to remain sober had not yet been proven. The magistrate further noted that Mother had no driver's license and two drug-related felony charges pending, the outcomes of which were uncertain. Finally, the court noted that Mother had two other children in the Agency's temporary custody, who needed psychological counseling due to Mother's parenting.

**C. Mother's Objections to the Adjudication Decision**

{¶ 20} In her objections to the magistrate's adjudication decision, Mother argued that the magistrate ignored that Severini "admitted honestly in court that --- had [there not] already been two older children of the mother already in foster care -- she would not have filed for dependency of this child." Mother argued that she was stable, in a suitable home, had completed inpatient care, and was otherwise capable of taking care of a newborn.

**D. Decision Overruling Mother's Objections to Adjudication**

{¶ 21} In a written decision, the juvenile court overruled Mother's objections to the magistrate's adjudication decision and adopted the decision. In doing so, the court reiterated many of the magistrate's findings regarding Mother's past drug history, her housing instability, her lack of income, and the continued concerns over Mother's parenting ability when considering the behavioral issues of the two older children.

{¶ 22} The juvenile court rejected Mother's argument regarding Severini's testimony about the Agency's reasons for filing the complaint, explaining that Severini merely meant that she would not have otherwise been aware of Jonathan's birth if it had not been for Mother's active children services case.

**E. The Dispositional Hearing**

{¶ 23} The matter eventually proceeded to a dispositional hearing before a magistrate. At the dispositional hearing, Robb O'Dell, an Agency caseworker, testified about the conditions present at Mother's father's home. The caseworker explained that when he last visited that residence the previous month, he observed exposed wiring and plumbing. According to Mother, those issues with the home had not been remedied. Mother stated that she had since made plans to move into a trailer that her mother was going to

purchase and they would live there together with Father.[3]  As to Mother's general progress on her case plan for reunification, the caseworker reported that everything was "moving forward."

### F.  Magistrate's Dispositional Decision

{¶ 24} In a written dispositional decision, the magistrate found that it was in Jonathan's best interest to remain in the Agency's temporary custody.  The magistrate noted that Mother was making excellent progress on her case plan for reunification, but that she still had not arranged suitable housing.  The magistrate noted Mother's plans to move to a trailer.  The magistrate also noted that Father was currently residing in a halfway house but was considering moving in with Mother if she and her mother moved to the trailer.

### G.  Mother's Objections to the Dispositional Decision

{¶ 25} Mother objected to the magistrate's dispositional decision.  However, Mother merely reiterated the arguments set forth in her earlier objections to the magistrate's adjudication decision.  She raised no specific arguments concerning the dispositional decision.

### H.  Decision Overruling Mother's Objections to Disposition

{¶ 26} The juvenile court then issued a decision overruling Mother's objections to the magistrate's dispositional decision.  The court noted that Mother had not raised any new objections specific to the dispositional decision.  The court further noted that while Mother had made plans to live with Father in a trailer, this was no longer possible because Father had returned to prison.[4]  The court adopted the magistrate's decision.

{¶ 27} Mother has appealed, raising four assignments of error.  We will address

---

3.  The record reflects that Father was released from prison in September 2022.

4.  Father's return to prison, for a parole violation (the details of which are not in the record), was discussed at a non-evidentiary hearing held on Mother's objections to the magistrate's dispositional decision.

those assignments out of the order they were presented by Mother.

## II. Law and Analysis

### A. Filing of the Case Plan for Reunification

{¶ 28} Mother's second assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF MOTHER BY ALLOWING CLERMONT COUNTY JOB AND FAMILY SERVICES TO FAIL TO TIMELY FILE A CASEPLAN.

{¶ 29} Mother argues that "It does not appear that a case plan was ever filed." Mother states that an "update" to the case plan was filed on August 4, 2022, but states that it is "unclear" whether this was "ever a properly filed case plan."

{¶ 30} R.C. 2151.412 governs case plans involving children alleged to be abused, neglected, or dependent. *In re Y.R.*, 12th Dist. Warren No. CA2020-09-057, 2021-Ohio-1858, ¶ 38. The statute provides that a children services agency "shall file the case plan with the court prior to the child's adjudicatory hearing but no later than thirty days after the earlier of the date on which the complaint in the case was filed or the child was first placed into shelter care." R.C. 2151.412(D).

{¶ 31} Mother did not raise any objection relating to the filing of the case plan during the proceedings below. Mother's failure to object constitutes a waiver and we are limited to reviewing for plain error. *See Y.R.* at ¶ 36. "Plain error in the civil context is 'extremely rare' and this court must find that the error involves 'exceptional circumstances' where the error 'rises to the level of challenging the legitimacy of the underlying judicial process itself.'" *In re J.W.*, 12th Dist. Butler Nos. CA2017-12-183 and CA2017-12-184, 2018-Ohio-1781, ¶ 13, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997). "The doctrine implicates errors that are 'obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings.'" *In re J.M.*, 12th Dist. Butler Nos. CA2018-06-124 and

CA2018-06-125, 2019-Ohio-3716, ¶ 14, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982).

{¶ 32} Upon review, we find no error here, plain or otherwise. The Agency filed its complaint on July 20, 2022 and the court held a shelter care hearing the same day and placed Jonathan in the Agency's temporary custody. The Agency filed the case plan on August 2, 2022, less than two weeks after the filing of the complaint and the placement of Jonathan in shelter care, and prior to the adjudicatory hearing. Accordingly, the case plan was timely filed.

{¶ 33} Mother suggests the case plan filed in this matter was not the case plan required to be filed under R.C. 2151.412 because it was an "updated" case plan, not an original case plan. A review of the document demonstrates that the "updated" case plan filed in Jonathan's case was the same case plan that Mother was working on in order to reunify with her older children. It was labeled "updated" to reflect that Jonathan was added to the plan. Mother's argument here is one of form over substance, with no statutory support. The fact that the case plan was labeled "updated" is irrelevant to the fact that the Agency did timely file a "case plan."

{¶ 34} Finally, we note that Mother claims that she was "prejudiced" by the "agency's failure to file a case plan." First, the Agency did file a case plan, so this argument has no merit. Second, Mother generically states that she suffered prejudice, but does not explain what prejudice she suffered. We find no obvious prejudice based on the record.

{¶ 35} We overrule Mother's second assignment of error.

**B. Evidence of Prior Dependency Case**

{¶ 36} Mother's third assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO INTRODUCE ANY EVIDENCE OF THE PRIOR DEPENDENCY CASE OF THE MOTHER'S TWO OLDER

CHILDREN IN CUSTODY.

{¶ 37} Mother argues that there was insufficient evidence presented at the adjudication hearing to allow the court to consider the existence of Mother's other active children services case, concerning her two older children. She states that there was only "testimony" concerning that case and that "certified copies of the earlier cases" were not submitted to the court.

{¶ 38} Mother never objected to the magistrate's decision on this basis and has waived all but plain error. Juv.R. 40(D)(3)(b)(iv) ("Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40[D][3][a][ii], unless the party has objected to that finding or conclusion as required by Juv.R. 40[D][3][b]").

{¶ 39} Mother does not argue plain error, nor does she cite any legal basis for her claim that the Agency was limited to proving the existence of her active children services case by filing certified copies of unspecified entries from that case. We are aware of no such authority and we are not obligated to craft a plain error argument on Mother's behalf. *See Reynolds v. Bailey*, 12th Dist. Butler No. CA2021-03-028, 2021-Ohio-3960, ¶ 9-11.

{¶ 40} Severini testified to the existence of Mother's prior history with the Agency and this was sufficient evidence to prove the existence of those cases. *See In re Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146, ¶ 9, 16, 19 (finding that case worker testimony concerning prior history of parents' involvement in children services was sufficient to support finding of dependency).

{¶ 41} Mother also does not claim that any of Severini's testimony as to the prior children services case was inaccurate or differed from the official records of those proceedings, so we cannot discern how it was prejudicial that certified copies of unspecified

documents from that case were not also admitted.

{¶ 42} We overrule Mother's third assignment of error.

### C. The Finding of Dependency

{¶ 43} Mother's first assignment of error states:

THE TRIAL COURT ERRED TO THE PREJUDICE OF
MOTHER BY FINDING THAT [JONATHAN] WAS
DEPENDENT.

{¶ 44} Mother argues that the juvenile court abused its discretion in finding Jonathan dependent. Mother contends that the "sole reason" for Jonathan's removal was the fact that her older children had been removed from her custody. Mother states that the other facts adduced at the adjudication hearing did not support a finding of dependency. Mother notes her positive progress on her case plan for reunification, her completion of inpatient drug treatment, and that she had a "stable home" available for Jonathan.

### 1. Applicable Law, Burden of Proof, and Standard of Review

{¶ 45} R.C. 2151.04(C) defines a "dependent child" as—among other options—any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship * * *." The date on which dependency existed must be alleged in the complaint, and the trial court must determine that the circumstances that support a finding of dependency existed as of the date or dates alleged in the complaint. *In re N.J.*, 12th Dist. Warren Nos. CA2016-10-086, CA2016-10-090, and CA2016-10-091, 2017-Ohio-7466, ¶ 27. "Thus, the juvenile court must decide the issue of dependency as of the date or dates specified in the complaint, and not as of any other date." *In re A.V.*, 12th Dist. Warren Nos. CA2021-04-030 thru CA2021-04-033, 2021-Ohio-3873, ¶ 21.

{¶ 46} "The determination that a child is dependent under R.C. 2151.04(C) focuses on the child's condition or environment, and not on the parent's fault." *A.V.* at ¶ 22, citing *In re Riddle*, 79 Ohio St.3d 259, 263 (1997); *In re M.W.*, 12th Dist. Warren Nos. CA2020-

03-018 and CA2020-03-019, 2021-Ohio-1129, ¶ 13.  Dependency under R.C. 2151.04(C) requires evidence of "conditions or environmental elements adverse to the normal development of the child."  *M.W.* at ¶13.  "[A]ctual harm to a child is not necessary.  Rather, circumstances giving rise to a legitimate risk of harm may suffice to support an adjudication of dependency under R.C. 2151.04(C)."  *N.J.* at ¶ 20.  A court may consider a parent's conduct under R.C. 2151.04(C) "solely insofar as that parent's conduct forms a part of the environment of [the] child."  *In re Burrell*, 58 Ohio St.2d 37, 39 (1979).  "As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention."  *Id.*  "That impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner."  *Id.*

{¶ 47} "The state bears the burden of proof of establishing that a child is abused, neglected, or dependent."  *In re L.H.*, 12th Dist.  Warren Nos. CA2018-09-106, CA2018-09-109 thru CA2018-09-111, 2019-Ohio-2383, ¶ 20.  "A juvenile court's determination that a child is dependent must be supported by clear and convincing evidence."  *A.V.* at ¶ 20, citing R.C. 2151.35(A); *In re T.B.*, 12th Dist. Fayette No. CA2014-09-019, 2015-Ohio-2580, ¶ 12.  "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established."  *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).  "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *Id.*

**2.  Analysis**

{¶ 48} After a thorough review of the record, we find that the juvenile court's adjudication of Jonathan as a dependent child under R.C. 2151.04(C) was supported by

clear and convincing evidence that Jonathan's condition or environment was such as to warrant the state in assuming his temporary custody.

{¶ 49} The record reflects that at the time of the filing of the complaint, Father was incarcerated. Mother, on the other hand, was involved in an active children services case involving her two older children. The circumstances that led to that case were that Mother was actively using illegal substances and had been charged with a felony drug offense.

{¶ 50} In preparing to turn herself in on the felony, Mother dropped her two older children off with her father. Her father contacted the Agency and informed it that he could not care for the children due to his work schedule. The Agency then took custody of the children and placed them in foster care, where they exhibited behavioral issues.

{¶ 51} After leaving her older children with her father, Mother spent a short time in jail. At some point, Mother and the Agency entered a case plan for reunifying Mother with her older children. As part of her case plan, and as part of probation on a criminal matter, Mother entered inpatient drug treatment from February 2022 to June 2022, successfully completing inpatient treatment. After leaving treatment, Mother continued with aftercare drug treatment. After leaving inpatient treatment, Mother lived with two different relatives. In July 2022, Jonathan was born. As of the date of Jonathan's birth, Mother had not been reunified with her older two children.

{¶ 52} Based on the evidence presented at the adjudication hearing, the state presented clear and convincing evidence of conditions or environmental elements adverse to the normal development of Jonathan. *M.W.*, 2021-Ohio-1129 at ¶ 13. Specifically, Mother's two other children had been removed from her care due to her inability to care for them based on her abuse of illegal drugs, her involvement in the criminal justice system, and her lack of appropriate housing and income. As of Jonathan's birth, Mother had not yet remedied the issues that led to the removal of these children.

{¶ 53} Mother had significantly progressed on her case plan by remaining sober and completing inpatient care. However, she had only recently left inpatient care in the month before Jonathan's birth. Thus, as noted by the court, she had not sufficiently demonstrated at the time of the filing of the complaint that she could maintain her sobriety in a "real world" setting.

{¶ 54} In addition, Mother had not remedied her issues with housing instability. She had no independent housing as of Jonathan's birth. She had moved between two different residences in the short time since her release from inpatient care. While Mother testified that she had a room set up to receive Jonathan, the evidence submitted at the hearing was that the home was not suitable for a child. This was the same home where her other two children had been left and had ultimately been handed over to the Agency when Mother's father indicated that neither he nor Mother's stepmother could care for the children. Further, the risk of Jonathan being left alone with Mother's father and stepmother was significant given Mother's unresolved criminal issues.[5]

{¶ 55} Rather than acknowledge these problems, Mother argues that the "sole" reason for Jonathan's removal was the fact of her active child services case. Mother argues that the Agency was not justified in seeking Jonathan's removal based solely on the existence of that children services case. And, as she did in her objections, she bases her argument on Severini's testimony that the Agency would not have filed the complaint but for the existence of the open children services case.

{¶ 56} Mother's argument here is difficult to understand because it appears that Mother believes that the Agency, when considering the risk to Jonathan, should have ignored the existence of Mother's active children services case. But Mother had not yet

---

5. Although not relevant to the adjudication decision, we note that by the time of the dispositional hearing, issues with that home, including exposed wiring and plumbing, had yet to be remedied.

remedied the issues that led to her older children's removal. And thus, Mother's active children services case was obviously relevant to the risk posed to Jonathan under Mother's care. The argument that the Agency should have ignored Mother's active children services case when assessing the risk to Jonathan is meritless.

{¶ 57} Mother argues that the juvenile court focused on the "negatives" without addressing her progress in working to reunify with her older children. Mother's argument here is also puzzling. Mother appears to suggest that the court should have ignored those aspects of Jonathan's condition or environment which could pose a risk to his well-being, and instead focus solely on Mother's positive strides on her existing case plan. However, in deciding the issue of dependency, the juvenile court was obligated to consider any circumstance giving rise to a legitimate risk of harm, not just those circumstances that weighed in Mother's favor.

{¶ 58} For the foregoing reasons, we conclude that clear and convincing evidence supported the juvenile court's adjudication decision. The Agency demonstrated circumstances that gave risk to a legitimate risk of harm to Jonathan if left in Mother's care. *N.J.*, 2017-Ohio-7466 at ¶ 20.

{¶ 59} We overrule Mother's first assignment of error.

### D. Less Restrictive Placement

{¶ 60} Mother's fourth assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO OFFER THE MOTHER A SAFETY PLAN IN LIEU OF AN OUTRIGHT REMOVAL.

{¶ 61} Mother argues that the juvenile court erred by failing to order the Agency to enter a safety plan with Mother. Mother hypothesizes that her father could have been offered temporary custody and Mother would then have agreed to a safety plan with the Agency. Mother argues that the "Agency did nothing to find a less restrictive setting in

accordance with R.C. 2151.314(C)(2) * * *."  We note that Mother's brief cites the (C)(2) subsection of R.C. 2151.314, but she actually quotes from the (B)(2) subsection.

{¶ 62} R.C. 2151.314 governs the procedures used at shelter care hearings.

{¶ 63} R.C. 2151.314(B) provides:

> (B) When the court conducts a hearing pursuant to division (A) of this section, all of the following apply:
>
> The court shall determine whether an alleged abused, neglected, or dependent child should remain or be placed in shelter care;
>
> The court shall determine whether there are any relatives of the child who are willing to be temporary custodians of the child. If any relative is willing to be a temporary custodian, the child would otherwise be placed or retained in shelter care, and the appointment is appropriate, the court shall appoint the relative as temporary custodian of the child, unless the court appoints another relative as temporary custodian. If it determines that the appointment of a relative as custodian would not be appropriate, it shall issue a written opinion setting forth the reasons for its determination and give a copy of the opinion to all parties and to the guardian ad litem of the child.

{¶ 64} It is not clear whether Mother is arguing in her fourth assignment of error that the court erred in its initial placement of Jonathan in the Agency's temporary custody following the shelter care hearing, or whether she is arguing against the subsequent dispositional decision.  R.C. 2151.314 refers to the procedures used at detention and shelter care hearings, not dispositional hearings.  *See In re A.C.*, 12th Dist.  Clermont No. CA2004-05-041, 2004-Ohio-5531, ¶ 30, fn. 2.  R.C. 2151.353(A), which Mother did not cite, provides the dispositional alternatives once a child has been adjudicated dependent.

{¶ 65} Regardless, Mother did not raise this argument at any point in the proceedings below and is therefore limited to a review for plain error.  Mother again does not argue plain error in her appellate brief.  Mother has neither argued nor demonstrated plain error.  Mother's argument as stated in her brief is that "[Mother] was living at her father's home

when she gave birth to [Jonathan]. Why wasn't her father offered temporary placement of [Jonathan] and with the Mother agreeing to a safety plan?"

{¶ 66} Mother's argument is without merit. For the reasons stated previously in this opinion, Mother's father was not a suitable person to take Jonathan's temporary custody, nor was there any evidence of his willingness to take Jonathan's custody. And his home was not a suitable placement. Further, the record reflects that the Agency made efforts in this case to find a less restrictive placement for Jonathan but there simply were none. The adjudication decision describes the Agency's reasonable efforts. Those efforts included the Agency speaking with Mother about possible relatives/kinship placements, entering into a case plan with Mother, setting up a visitation schedule, and assisting Mother financially so that she could attend visitation.

{¶ 67} For these reasons, we overrule Mother's fourth assignment of error.

### III. Conclusion

{¶ 68} Jonathan's adjudication as a dependent child was supported by clear and convincing evidence. Mother has not established plain error with regard to the filing of the case plan for reunification, proof of the existence of her active children services case, or the Agency's efforts to place Jonathan in the least restrictive environment.

{¶ 69} Judgment affirmed.

S. POWELL, P.J., and PIPER, J., concur.