[Cite as *In re M.S.M.B.*, 2026-Ohio-2125.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| M.S.M.B. | : | CASE NO. CA2026-01-004 |
| | : | OPINION AND JUDGMENT ENTRY 6/8/2026 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2025-0104

Matthew A. Craig, for appellant.

Michael T. Gmoser, Butler County Prosecuting Attorney, and Stephen M. Wagner, Assistant Prosecuting Attorney, for appellee.

Legal Aid Society of Southwest Ohio, LLC, and Nancy R. Braun, guardian ad litem.

## O P I N I O N

**PIPER, P.J.**

{¶ 1} Appellant ("Mother") appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating her daughter, M.S.M.B. ("Mary"), a

dependent child.[1] For the reasons outlined below, we affirm the juvenile court's decision.

**Facts and Procedural History**

{¶ 2} Mary was born on July 28, 2012. Several years later, when Mary was approximately 12 years old, appellee, Butler County Department of Job and Family Services ("BCDJFS"), investigated a report that substantiated allegations that Mary had been sexually abused by Mother. In addition to the substantiated sex abuse, Mother has a significant history with BCDJFS regarding her illicit drug use. Both Mother and Mary's putative father have criminal histories, with Mother's most recent conviction being a second-degree misdemeanor drug offense. The man believed to be Mary's biological father is not a party to this appeal.

{¶ 3} On June 3, 2025, BCDJFS filed a complaint alleging that Mary was a dependent child. BCDJFS filed its complaint after learning that Mary's non-relative temporary custodian could no longer care for Mary due to a failed home study. The failed home study effectively left Mary homeless unless BCDJFS intervened to assume her guardianship pursuant to R.C. 2151.04(C). Upon receiving BCDJFS's complaint, the juvenile court held a shelter care hearing. Following that hearing, the juvenile court issued an emergency ex parte order placing Mary in the temporary custody of BCDJFS and awarding Mother with visitation. The juvenile court also appointed a guardian ad litem for Mary and an attorney for Mother.

{¶ 4} On August 22, 2025, BCDJFS filed a motion requesting that Mother's visitation be suspended. To support its motion, a BCDJFS caseworker averred that Mary no longer wished to visit Mother because the visits conjure "unresolved trauma" stemming

---

1. For purposes of readability, rather than referring to her by her initials, we will refer to M.S.M.B. by the fictitious name "Mary."

from Mother's prior threats to sell Mary for drugs and to let men "have their way" with her. The caseworker also averred that Mary had reported to BCDJFS that Mother had "taken naked pictures of her and sent them to others." The caseworker further averred that BCDJFS had recently received a letter from Mary's counselor advising BCDJFS that Mary had been experiencing "memories" and "trauma responses" following her visits with Mother. The counselor's letter also notified BCDJFS that Mary's visits with Mother had caused Mary considerable anxiety over her fear that Mother would try to "track her down."

{¶ 5} On August 25, 2025, the juvenile court granted BCDJFS's motion to suspend Mother's visitation. Approximately three weeks later, on September 12, 2025, the juvenile court held an adjudicatory hearing on BCDJFS's still pending complaint for dependency. A juvenile court magistrate presided over that hearing. During the hearing, the magistrate heard testimony from a single witness, BCDJFS caseworker Alli McCall. McCall testified that as of June 3, 2025, the date BCDJFS filed its dependency complaint, there was no approved home in which Mary could reside. McCall also testified that Mother, whom BCDJFS knew "didn't have stable housing" and had "past substance abuse concerns," had told BCDJFS that "she would not be able to have placement of her daughter and she said she would look into family." The record indicates that Mother never provided BCDJFS with any potential placements for Mary, whether relative or non-relative.

{¶ 6} McCall further testified that placing Mary with her purported father was not an option either because "he had been recently released from prison" and, although they had his phone number, "we couldn't reach him." This is in addition to McCall testifying, "No," when asked whether, on the day BCDJFS filed its complaint for dependency, June 3, 2025, there was "anybody available" to provide for Mary's "daily needs, basic needs, care, custody, all of that?" McCall also testified, "No," when asked whether Mary was "in

a position to remain at anybody's home outside of [BCDJFS's] custody" at the time BCDJFS filed its complaint. Thereafter, when asked why BCDJFS felt the need to "step in" and assume guardianship of Mary, McCall testified:

> Because [Mary] was no longer able to stay where she had been staying due to the failed home study as well as them saying, due to her behaviors and things that have been going on [over] the past weekend, they were unable to continue caring for her.

{¶ 7}   At the conclusion of this hearing, the magistrate issued a decision adjudicating Mary to be dependent. In so doing, the magistrate stated:

> In this case, upon investigation the agency determined that the child would not be permitted to remain in her current placement with [her non-relative temporary custodian,] (for which the home study was also being denied). No other suitable placements were identified after investigation, including placement with Mother as Mother denied being able to have the child placed with her.

{¶ 8}   On September 26, 2025, Mother filed an objection to the magistrate's decision. To support her objection, Mother argued that the record contained insufficient clear and convincing evidence to support the magistrate's decision to adjudicate Mary as a dependent child. The juvenile court held a hearing on Mother's objection on November 19, 2025, where it heard arguments from both parties. Two weeks later, on December 3, 2025, the juvenile court issued a decision overruling Mother's objection. In so doing, the juvenile court noted that it had reached its decision after conducting its own independent review of the record. This necessarily included the court's review of the adjudicatory hearing transcript.

**Mother's Appeal and Three Assignments of Error**

{¶ 9}   On January 5, 2026, Mother filed a notice of appeal. Mother's appeal was submitted to this court for consideration on May 13, 2026, and is now properly before this court for decision. Mother raises three assignments of error in support of her appeal.

- 4 -

Mother's three assignments of error challenge the juvenile court's decision to adjudicate Mary as a dependent child, arguing that the record contains insufficient clear and convincing evidence to support such a decision. We disagree.

*R.C. 2151.04(C) and the Statutory Definition of "Dependent Child"*

{¶ 10} Pursuant to R.C. 2151.04(C), a "dependent child" is any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." "Generally, R.C. 2151.04(C) is to be broadly applied to protect the health, safety, and welfare of children." *In re L.H.*, 2019-Ohio-2383, ¶ 41 (12th Dist.). The emphasis is on the best interest of the child. *In re A.G.*, 2025-Ohio-1228, ¶ 40 (5th Dist.). To that end, "[t]he state does not need to demonstrate actual harm to a child before taking steps to ensure that a child is protected; it is sufficient that circumstances giving rise to a legitimate risk of harm may suffice to support an adjudication of dependency under R.C. 2151.04(C)." *In re Y.R.*, 2021-Ohio-1858, ¶ 60 (12th Dist.). "Thus, dependency under R.C. 2151.04(C) requires 'evidence of conditions or environmental elements that were adverse to the normal development of the child.'" *In re N.J.*, 2017-Ohio-7466, ¶ 19 (12th Dist.), quoting *In re E.R.*, 2006-Ohio-4816, ¶ 13 (9th Dist.).

{¶ 11} But, even then, "simply because a child's physical needs are being met and a home is clean does not preclude a juvenile court from finding a child dependent." *In re Y.R.* at ¶ 59. "Whether a parent can provide adequate food and shelter to a child is only one aspect that a court considers in a dependency case." *In re A.G.* at ¶ 40. "The determination that a child is dependent requires no showing of fault on the parent's part." *In re M.W.*, 2017-Ohio-7358, ¶ 14 (12th Dist.). The focus is instead "on the child's condition or environment, and whether the child was without adequate care or support." *In re W.C.H.*, 2015-Ohio-54, ¶ 14 (12th Dist.). That is not to say a parent's conduct is

immaterial or unworthy of the juvenile court's consideration. *See In re T.B.*, 2015-Ohio-2580, ¶ 20 (12th Dist.). The court is limited, however, to considering a parent's conduct only insofar as it forms part of the child's environment. *In re S.J.J.*, 2006-Ohio-6354, ¶ 12 (12th Dist.). "A parent's conduct is significant if it has an adverse impact on the child sufficient to warrant intervention." *In re S.W.*, 2012-Ohio-3199, ¶ 12 (12th Dist.).

*Clear and Convincing Evidence is Required to Support a Dependency Adjudication*

{¶ 12} "The state bears the burden of proof of establishing that a child is abused, neglected, or dependent." *In re L.H.*, 2019-Ohio-2383, ¶ 20 (12th Dist.). "A juvenile court's determination that a child is dependent must be supported by clear and convincing evidence." *In re A.V.*, 2021-Ohio-3873, ¶ 20 (12th Dist.). "Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence." *In re D.R.*, 2026-Ohio-694, ¶ 17, fn. 5 (12th Dist.). It is instead "'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re K.K.*, 2024-Ohio-2595, ¶ 36 (12th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 13} When a challenge to the juvenile court's decision adjudicating a child as dependent arises, as in this case, we are tasked with examining the record to determine whether sufficient evidence was presented to meet the applicable clear-and-convincing-evidence standard. *In re J.S.*, 2024-Ohio-773, ¶ 47 (12th Dist.). This court "will not reverse a finding by a juvenile court that the evidence was clear and convincing unless there is a sufficient conflict in the evidence presented." *In re M.W.*, 2017-Ohio-7358 at ¶ 12 (12th Dist.), citing *In re A.F.*, 2007-Ohio-1646, ¶ 10 (12th Dist.).

**Mother's Arguments and Analysis**

{¶ 14} Mother argues the juvenile court erred by adjudicating Mary a dependent child by taking a "wholesale adoption of the various allegations" set forth within BCDJFS's

complaint. This is because, according to Mother, most of those allegations "consisted of inadmissible hearsay," while others "concerned allegations emanating nearly a year earlier or went unmentioned at trial altogether," such as her "alleged prior criminal record." Mother also argues the juvenile court erred by adjudicating Mary a dependent child when considering the record is devoid of any evidence that Mary had "not received adequate care or support," that "her condition or environment had detrimentally impacted her," or that her "needs had ever gone unmet" while residing with her non-relative temporary custodian. This is in addition to Mother arguing that the juvenile court erred by considering Mary's "best interest" when overruling her objection to the magistrate's decision to adjudicate Mary as a dependent child.

{¶ 15} Upon review, we find no merit to any of Mother's arguments. We instead find this to be a textbook case of dependency where there exists overwhelming, clear and convincing evidence to support the juvenile court's decision to adjudicate Mary as dependent. This includes, most notably, McCall's testimony that Mary would have effectively been rendered homeless had BCDJFS not intervened and taken the steps necessary to assume Mary's guardianship when it did. Mother's arguments and assertions that this case presents a grave injustice that demands reversal are nothing more than her attempt to confuse the issues in hopes that this court would be overcome by the morass of her arguments. Mother's attempts have failed, as have Mother's efforts to control the underlying narrative that this case presents.

{¶ 16} This case is simple and straightforward. To summarize, we can find no better wording than what BCDJFS provided in its brief:

> Here, the allegation of dependency was based on the immediate threat that no adult was able to provide for [Mary's] care or support. It bears repeating, the child was **homeless**. Mother cannot seriously contend that leaving her daughter homeless is an adequate condition and environment to

> support the child's normal development. The evidence was
> simple, yet clear and convincing, that [Mary] was immediately
> going to be homeless and without anyone to provide for her
> care. Thus, the state's intervention was warranted.

(Emphasis and bold text in the original.) We agree with BCDJFS. Therefore, because no merit exists in any of Mother's arguments that she raised in support of her three assigned errors, Mother's three assignments of error challenging the juvenile court's decision to adjudicate Mary as a dependent child lack merit and are overruled.

## Conclusion

{¶ 17} For the reasons outlined above, and having now overruled Mother's three assignments of error challenging the juvenile court's decision to adjudicate Mary as a dependent child, Mother's appeal is denied.

{¶ 18} Judgment affirmed.

M. POWELL and SIEBERT, JJ., concur.

# J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*